# COURT OF ERRORS AND APPEALS.

WILLIAM KENT, ANDREW C. ARMSTRONG ET AL., APPEL
LANTS, v. CHARLES M. ARMSTRONG, WILLIAM L. SALTER
AND WIFE, ET AL., RESPONDENTS.

A devise to E. R. of all the residue of testatrix's estate, real, personal, and
mixed, "to be by her possessed, enjoyed, and occupied, to her, her heirs and
assigns, forever," with the proviso "if my said daughter E. R. should die
without heirs and intestate," then all the devised estate to vest in her son C.
and daughter M., and their heirs, creates a life estate only in E. R., in both
real and personal estate, with power of disposal by will and not by deed.

This case is reported *ante p.* 559.

It was argued on the appeal by

*I. W. Scudder* and *P. D. Vroom*, for the appellants, and

*A. S. Pennington* and *Wm. Pennington*, for the respondents.

RANDOLPH, Justice, delivered the opinion of the court.

Margaret Armstrong made and duly executed her last will
and testament, by which, after disposing of her plate to her four
children, giving her husband a life estate in her house and lot in
Elizabethtown, if he remained unmarried and occupied the same
as a residence, but at his death, or when he should cease to comply with the conditions of the will, his devise was to become null
and void, and the house and lot and all the furniture therein ex-

cept the plate, is to become the absolute property of her daughter Eliza Rosetta, " to be taken and held *under the like restrictions, limitations, and conditions as the property hereinafter bequeathed to her.*"

The testatrix then gives rings to each of her children as tokens of affection, and regretting her inability to provide more amply for them, but consoling herself that Edward and Margaret are in easy circumstances, and that Charles has the disposition and ability to provide for himself, she gives and bequeaths all the rest and residue of her estates, real, personal, and mixed, (subject to her husband's life interest in some part thereof,) to her daughter Eliza Rosetta, " to be by her possessed, enjoyed, and occupied, to her, her heirs and assigns forever," with the proviso, " but if my said daughter Eliza should die without heirs and intestate, then my will is that all the estate hereinabove devised to her shall vest in my son Charles M. Armstrong, and my daughter Margaret Salter and their heirs, to be divided between them, share and share alike."

The question for our consideration under this will is, what interest or estate did Eliza Rosetta take in the real and personal property of her mother ?

In the construction of wills, the primary and important inquiry is to ascertain the intention of the testator; indeed, pretty much all the rules for construing wills and devises are based upon what is the apparent or the presumed intention of the testator, and if that appears to be clear and not in violation of any established principle of law, that intention is to govern without further inquiry or regard to mere technical terms. 2 *P. Wm.* 741 ; *Doug.* 431 ; 4 *Vesey* 51. And in tender regard for the supposed situation of a testator, the law regards his acts with extreme indulgence, and without the presumptions which are raised against the grantor or the grantee of an estate. But in order as far as possible to sustain a uniformity in construing wills, courts, on the general presumption that such was the intention of testators, have settled the meaning of certain terms and principles as applicable alike to all wills wherein they occur or arise, and are not obviated by other matters. Thus the term " die without issue," standing uninfluenced by other parts of the will,

Kent v. Armstrong.

is construed to mean an indefinite failure of issue, that is, a failure, not on the death of the first taker, but a failure when all his issue or descendants shall cease, and this rule is on the presumption that, by "issue," the devisor means all the children and their descendants of his devisee.

What, then, was the intention of the testatrix in this will? What estate did she intend to give to her daughter Eliza Rosetta, and what over to her son Charles and daughter Margaret Salter?

In the first place, it is to become the absolute property of Eliza Rosetta, and to be to her and her heirs forever. Either of these terms alone would convey a fee simple, but this is not intended, for both are connected with the proviso that, "if my said daughter Eliza Rosetta should die without heirs, and intestate," then all the estate should go over to or vest in Charles and Margaret. Now, what was the object of inserting this proviso? Manifestly, in some way to limit the absolute interest and fee simple previously given to Eliza Rosetta. But how limit? She was the particular object of her mother's bounty, and to her and her children, if she had any, this absolute estate was to be given. But she was not the only object of the mother's solicitude. She had other children who needed her aid, and she intended that her son Charles and daughter Margaret should have the estate, if her first devisee failed. Consistent with this special interest for Charles and Margaret, she intended that Eliza should have the whole estate or interest, be it what it may; it was to be possessed, enjoyed, and occupied by her for life, or, at will, to go to her children, if she had any, in such way as the mother, by will, should appoint, or as should arise under the devise. And this power of appointment, whether intentional or otherwise, by the generality of the words used, would extend to the sister and brothers, or to any others whom Eliza, by will, should designate. But Eliza might die without children, and without will or appointment by will. In that case, could it even have entered into the contemplation of the mother, whose "deepfelt regret" is expressed in the will, that she could not provide more amply for the other children, that she was giving Eliza an absolute interest in the estate, which she might convey by deed, and thus prevent its ever

vesting in Charles and Margaret. The intention on the face of the will is, palpably, that Eliza was to take only such estate, and have such right and power only as that the property should go over to Charles and Margaret in case of failure in the first devise. The only difficulty is, whether she has made use of such terms as will enable the court to carry out that intention without violating the settled principles of law.

"Die without heirs" is to be construed as the counsel conceded it to mean, without issue. *Cro. Jac.* 415; 3 *Lev.* 70; 1 *P. Wm.* 23; 2 *Saund. R.* 288, *a, b.*

The qualification thus understood would imply an indefinite failure of issue, (3 *Halst.* 39; *Spencer* 6; 4 *Kent* 273,) and, without other qualification or annexation, would reduce the previously given absolute estate of Eliza to an estate in fee tail in the realty, with a contingent remainder to Charles and Margaret. A devise to A B and his heirs, and if he die without issue, then to C in fee, being equivalent to a devise to A B and the heirs of his body, which is a fee tail at common law, or, under our statute, an estate for life. This would not, however, affect the personal property, as that cannot, unless under very special circumstances, be limited over after an indefinite failure of issue. It would, therefore, still remain the absolute property of Eliza. *Forth* v. *Chapman*, 1 *P. Wm.* 666; *Ib.* 564; 3 *Atk.* 288; 2 *Ib.* 88 (1); 2 *T. R.* 720; 4 *Kent* 275 (a); 11 *Wend.* 260.

But to the qualification, "die without heirs," the testatrix his added the words, "and intestate," and the whole case turns upon these two words, for Eliza Rosetta conveyed the real estate by deed, and afterwards died without issue, and intestate. What effect have these words on the estate, the qualification thereof, or both?

There is a class of cases in which the doctrine is well settled, that when the will gives to the first taker an absolute power of alienation and disposal in express terms, or by necessary implication, he takes the absolute estate or fee simple, and the executory devise over is void as contrary thereto. Thus, in the *Att'y-Gen.* v. *Hall*, *Fitzg.* 314, real and personal estate was given to the son, and if he die without issue, then what he should be possessed of at his death was given over to the Goldsmith's Company, of

London ; it was held that the term, *"what he should die pos-sessed of,"* implied an absolute power of selling or disposal of the whole, which gave the first taker the whole estate, and there was nothing to devise over. So in *Ide* v. *Ide,* 5 *Mass.* 500, what estate he shall leave is devised over, which Parsons, C. J., says shows that it was the intention of the testator that the de-visee should have an unqualified power of disposal of the estate at his pleasure, which implied a fee simple, and left nothing on which the executory devise could operate. So in *Jackson* v. *Bull,* 10 *Johns. R.* 19, there was a devise to M. in fee, and if he died without issue the said property he died possessed of was given over to another, held for the same reason that M. took a fee, and the devise over was void. So also in *Jackson* v. *Delancy,* 11 *Johns. R.* 365, and 13 *Ib.* 537, and in *Jackson* v. *Robbins,* 15 *Ib.* 167, and in the same case in error, 16 *Ib.* 537. The cases arose under the will of Lord Stirling, of this state, by which he gave all his estates to B., his wife, her executors, ad-ministrators or assigns, but in case of her death without giving, devising or bequeathing by will or otherwise, selling or assign-ing the said estate, or any part thereof, then the same, or such part as was undisposed of, was given over to his daughter, Lady Catharine Duer. It was held that the wife took the entire es-tate, and the devise over was void, though there were other points in the case which destroyed the plaintiff's right of action. Chancellor Kent, in delivering the opinion of the Court of Errors, takes occasion to remark, that when an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee, and the only exception to the rule is when the testator gives the first taker *an estate for life only by certain or express words, and annexes to it a power of disposal.*

The extent of the rule was not involved in the case of Jack-son *v.* Robbins, or in any of the cases referred to, and the re-marks, therefore, and distinction of the learned Chancellor were not required in the decision of the case, for in these cases the effect of the power controverted was full and absolute to the disposal of the whole estate by devising, selling, assigning or otherwise. And the authorities referred to on this point do not necessarily create such distinction, though they very clearly estab-

lish the rule that when an estate for life is given by will, with a power of disposal, then the devisee has but an estate for life, with a power which does not enlarge the estate. The cases are of express devises for life, with power of disposal, and are distinguished from mere naked powers to executors or others to sell or convey ; but if an estate for life is created in the first instance, with the power of disposal, it is of no consequence whether the life estate be created by express words or necessary implication or construction of the will. The same reasoning will apply to both, and of course the same rule should also. *Tomlinson* v. *Dyton,* 1 *Salk.* 239 ; 1 *P. Wm.* 149 ; 2 *Cox* 396 ; 10 *Vesey* 370 ; 2 *Wils.* 6 ; see also 1 *Sugden on Powers* 119, 120, where the matter is fully discussed and cases cited.

Having shown the two classes of cases, viz., where a general and absolute power of disposal is given to the devisee, which create a fee simple, or when a life estate is given with a mere power of appointment or disposal to particular persons, or in a particular way, the question arises to which, if either, does the devise in this case to Eliza Rosetta belong ? Here is no general and absolute power of disposal given in the will, either expressly or by implication, but the words can only imply a power to dispose of by will ; and so, too, here is no life estate given by express terms, and can only arise, if at all, by fair construction of the will. Retaining in view, then, the manifest intention of the testatrix, what is the legal construction to be placed upon this devise and bequest. She first gives an absolute interest and fee simple, then adds the restriction, " *die without heirs,*" by which the fee is reduced to an estate tail, with a contingent remainder, and to this restriction is added the words " *and intestate.*" And then the inquiry arises, what effect are these words to have upon the restriction or the estate ? Confined to the restriction, they merely change what was before an indefinite failure of issue to a definite failure upon the death of the first devisee, and so make the estate given to Eliza Rosetta either by the original devise of the fee simple and absolute interest, or by the general and absolute power of disposal, as insisted by counsel, implied by the words " *and intestate,*" an absolute estate in fee simple, and the executory devise over to Charles and Margaret void.

No American authority has been cited or found which fully meets the question as it stands here and takes this view of it, and no English case to that effect has been adduced, except two of very recent date, and of no further authority in this court than what is due to the opinion of the judges who pronounced them, and the learning and reasoning by which they are sustained. All the cases except these two show an absolute power of disposal either expressly or by necessary implication, and we have seen that this class of cases of necessity creates a fee simple. But it has been before shown that you may create a life estate with a special power of appointment or devise over without this consequence following, because there is no general and absolute power of disposal given. The first of the two cases referred to is that of *Cuthbert* v. *Perrine*, 1 *Jac. C. R.* 441, which was a bequest to A to be paid at the age of 21, and if he died under age, or after that period without heirs and intestate, then over; and it was held that A took an absolute interest on arriving at the age of 21 years. This case belongs to a distinct class, different from the one under consideration, viz., when dying without issue is connected with the collateral contingency having reference to the *age* of the first taker, which is construed to mean a definite failure of issue, and to create an absolute estate in the first taker. *Lewis on Perpet.* 228; 1 *Powell on Dev., by Janvin*, 187, 8; 2 *Ib.* 573, 9; and also *Den* v. *Taylor & Shepherd*, 2 *South.* 413; which is very nearly this case. A devise to S. in fee, but if he die before he arrive at lawful age or has lawful issue, then over, was held to be a definite failure of issue, and created a fee in S. See also 1 *Taunton* 174; and 3 *Bing.* 13. It thus appears that there is sufficient in the case of *Cuthbert* v. *Perrine* to create precisely the interest decided by Sir T. Plummer to have been bequeathed, without reference to the words "intestate," or requiring a construction thereon.

The other case relied on is that of *Green* v. *Harvey*, 1 *Hare* 428. The volume of reports embracing this case, has not been re-published in this country, and the only book in which I have been able to find any account of it is in *Lewis on Perpetuities* 230. It was a bequest of household property to a son, "and should he die without heir or will," then over, and it was held

that the son took an absolute interest, the gift over on the contingency of the legatee's not making a will being held void. The case is certainly in point; but that the force of the decision is somewhat impaired, if not questioned, even in England, we have but to quote from the author just cited in introducing the case. "A gift to take effect in the event of a person not exercising the power of disposition incident to the property or ownership which the testator or donor has vested in him is void; and if such a contingency cannot be contemplated, it is difficult to conceive what influence the mention of it can have on words importing a failure of issue, *which ought, in that case, to be read independently of such void collateral contingency.*"

How far this view may have influenced the mind and opinion of Sir J. Wigram, V. C., it is impossible to say, for, the case being one of personalty only, if the words "*or will,*" and the "*void contingency*" were stricken out, the result of the case must have been the same.

According to the cases heretofore cited, "*die without issue*" created an estate tail in real estate and an absolute interest in a chattel or legacy. The same suggestions will apply, if it were necessary thus to appropriate them to the force of the word "*intestate,*" in Cuthbert *v.* Perrine; and if we make the same application to the devise now under consideration, and strike out the void contingency "*and intestate,*" the language of the will would create an estate tail, (a life interest under our statute) in Eliza Rosetta, in the real estate, with a contingent remainder in Charles and Margaret, and in the personalty an absolute interest in Eliza. But it is conceived that we have no right to strike out the words "*and intestate*" as a void contingency, because it is a well-settled principle in the construction of wills that, if it be possible, all the words in a devise or bequest are to be taken into consideration, and to have awarded to them their full import and meaning. 6 *Cruise* 171, 2; 2 *Barr* 770; 2 *P. Wm.* 282; 3 *Yates* 187; 4 *Mass.* 208.

And, in this respect, the reasoning, or rather the "impression" of Sir T. Plummer, in the case before cited, is considered defective; it is that the limitation over is not good, because "the absolute property is first given with the power of disposal as a con-

sequence, and then it is given over if he die intestate." The word intestate is used by the learned master to determine the failure of issue to be definite and then stricken out, without being permitted to operate upon the nature of the interest bequeathed, to determine its character, but in lieu thereof the power of disposal and the character of the interest are assumed from the first bequest, without taking into consideration the contingency connected therewith or the qualification annexed to that; so in the case now under consideration, the word intestate is used to change an indefinite failure of issue to that of a definite character, and then it is thrown aside without being permitted to operate on the character of the estate, but without its influence from the power given to the devisee to possess, enjoy and occupy the property for herself and her heirs forever, subject to the restrictions, limitations and conditions of the will, an absolute interest is assumed, or else if the word is retained and suffered to operate at all, it is merely to neutralize the qualification of the estate " die without issue" and render the whole proviso nugatory, so that the construction is to be precisely as if the testatrix had bequeathed an absolute interest and estate in fee simple without any " restrictions, conditions or limitations" whatever.

Now it is utterly impossible, from the face of this will, that either law or reason can presume any such intention on the part of the testatrix. The qualification and the addition were annexed to the devise to limit what would have otherwise been an absolute interest, and we have no right to make one defeat the other, unless some imperative rule of law requires it. But we have seen that an estate may be devised to one for life with a power to appoint or devise it over in fee. Adopting this as the construction, we make every part of this will harmonize and every clause and word operative, and give full effect to the intention of the testatrix. We give to the favorite daughter all the interest and estate which she can or was intended to have, preserve the interest from going into the hands of strangers and protect the devise over to the two other children. Cases are not uniform in England; slight circumstances of intention will often create a wide variance in the result. In *Beachcraft* v. *Broome*, 4 *T. R.* 441, under the words died without having settled, or other-

wise disposed of the estate so devised, or without issue of the body, then over, Lord Kenyon held the devise over good, as an executory devise; and in *Doe* v. *Reeves*, 7 *T. R.* 277, a devise to A. and her heirs, and if she die without issue, then A. to dispose of the whole by will or any other instrument in writing, attested by three witnesses as she should direct, limit or appoint, and for want of such issue and direction, then over in fee, the King's Bench held the devise over good, as a contingent remainder. In *Wright* v. *Atkins*, 17 *Vesey* 255, and 19 *Ib.* 299, a devise to a wife and her heirs in the fullest confidence that after her decease she will devise the property to — family, it was held that the wife took an estate for life with remainder over in trust. In *Mifflin* v. *Mifflin*, 6 *S. & R.* 460, the Supreme Court of Pennsylvania held that a bequest to two sons, and if either die without will or lawful issue, then such, &c., over to the survivor and his heirs, gave a life estate to the legatee and an executory devise over. On the death of one, his executors took the interest due, and the principal passed over to the survivor. And in *Boyd's Heirs* v. *Bingham*, 4 *Barr* 102, the same court held that in a devise of all real and personal estate to a wife, her heirs and assigns forever, and to will the same to whom she pleases, on condition that she remains my widow, and in case of her marriage or death without a will, a devise over to other persons, the estate of the wife was held but a life interest, and that the devise over was good; and although the wife remained unmarried and conveyed the estate by deed to R. B., and subsequently by will bequeathed the proceeds of the estate to R. B., yet the devise over was good, and the power to dispose of the property by will was not executed by conveying the same by deed and bequeathing the proceeds by will. The opinion of the court in this case by Chief Justice Gibson, placed the matter principally on the ground of intention; had his strong and lucid mind investigated the cases on the subject, his opinion would have been of more force and saved much labor in the present cause.

In *Doe* v. *Howland*, 8 *Cowen* 284, Savage, C. J., in delivering the opinion of the court, says, " It is undoubtedly true that a devise with power to convey a fee, carries a fee, though a devise

Kent v. Armstrong.

with power to devise in fee carries but a life estate." The remark was not essential to decide the cause, and so it is left to stand unsupported by reasoning or authority, yet whoever will consider the positions and examine the cases fully will find it difficult to come to a contrary conclusion. The first proposition is correct, because the power to convey in fee is a fee itself, and not a mere power; it is that which you cannot separate from a fee, being the absolute power or right of disposal in any way; but the power to devise in fee is a very different matter; not being itself a fee, but merely one of the attributes of a fee, it is a mere power and does not constitute a fee in the first devisee, as a power or right of general conveyance or disposal does, consequently the first devisee takes but an estate for life with a power; and no case of a devise contrary to this has been shown or discovered by the court.

When the power is to be executed by will it cannot be done by deed or otherwise. *Boyd's Heirs* v. *Bingham,* before cited, 8 *T. R.* 57; 2 *East* 481.

It is said that an executory devise is indestructible; that it cannot be barred or destroyed by the holder of the preceding estate. Now this rule only means that the first taker, as a general rule, cannot create a greater estate than he has; having a defeasible estate he cannot create an indefeasible one; he can do no act to prevent the vesting of the devise on the happening of the contingency, but he may prevent that occurrence. Mr. Fearne's rule, as to the indestructibility of the devise by the holder of the preceding estate, does not apply, because the former does not proceed out of the latter, but is an independent estate. *Fearne Ex. Dev.* 418. And so is not indestructible by destroying the contingency, or *vicè versa.* Thus the executory devise upon dying without a will is good; but if a will be made, the contingency is destroyed and so is the devise.

An executory devise may be so limited after an estate tail, and yet the tenant in tail may convey the estate by fine or recovery, and thus destroy the devise over. 16 *Johns. R.* 539; *Powell on Dev., by Janvin,* 246; *Jarman on Wills* 664; *Cro. Jac.* 592; *Fearne, by Pow.,* 18.

The only question left for our consideration is, whether the same doctrine applies to personal, that has been advanced as to real property. Where a fee-tail is created by will, the law, as before stated, creates a distinction between the real and personal estate, on the ground that it will not presume that the testator intended to limit personal property on an indefinite failure of issue, and, therefore, as to such property, is construed that the legatee under such a limitation has the absolute interest. But an executory devise only applies where the terms used imply a definite failure of issue, and of course the above distinction does not apply, but both real and personal property can and do go over on such definite failure of issue by way of executory devise. *Hull* v. *Eddy*, 2 *Green* 175; 16 *Johns. R.* 565, 584; 1 *Jarman on Wills* 793, (*n.* 2.)

We come, then, to the conclusion that in the real and personal property devised and beqeathed to Eliza Rosetta by the will of her mother, subject to the limitations therein expressed, she takes a life estate only, with a power of appointment or disposition by will; and that in the event of her dying without issue and intestate, the executory devise over vested in her brother Charles and sister Margaret, and that they, therefore, are entitled to all the principal of the estate, which, of course, does not include interest, dividends, or rents and profits due at the death of Eliza; they go to her personal representatives.

The deed executed by Margaret Salter, Charles and Edward Armstrong, and the marriage settlement entered into between Eliza Rosetta and her future husband, and Judge Kent, can in no way alter the above conclusion. The former only operates in confirmance of the power of their mother to execute a will under her marriage settlement, and the latter only on the property which Eliza Rosetta had a right to convey or absolutely control.

I am, therefore, of opinion that the decree below must be reversed and a decree entered in favor of the complainants, in accordance with the foregoing principles and conclusions.

In this opinion, WALL, SPEER and McCARTER, Judges, concurred.

Decree reversed.

NOTE.—Chancellor H., considering the questions involved in this case proper for the law courts to decide, and having given an opinion on the will when at the bar, referred it to the Supreme Court, and gave no opinion in the Court of Chancery, or the Court of Errors and Appeals. REPORTER.

