JOHN CRAWFORD et al., executors, &c.,

*v.*

CARRIE L. LEES et al.

[Submitted December 28th, 1914. Determined January 27th, 1915.]

1. Where the probate of a will is set aside, an heir, as such, is not entitled to an accounting for a share of the personal property of the deceased, which has come to the hands of others, as such accounting must be in behalf of an administrator.

2. A surrogate, in probating a will, holds a court and exercises judicial functions, and his decree is not subject to collateral attack, except for fraud or want of jurisdiction.

3. In the absence of fraud of the parties, a judgment of a court of general jurisdiction cannot be collaterally impeached, if the court had jurisdiction of the subject-matter and the parties, and "jurisdiction" in that sense is the power to hear and determine a cause.

4. The erroneous determination of a court of general jurisdiction of facts, on which its jurisdiction depends, cannot be collaterally attacked.

5. The principle that a judgment of a court having jurisdiction of the subject-matter and parties cannot be collaterally impeached applies to an action *in rem*, as in such case all the world is a party.

6. Want of jurisdiction over the subject-matter will subject the judgment of any court to collateral impeachment.

7. The distinction between judgments of courts of general jurisdiction and those of certain inferior tribunals of special limited jurisdiction is that in the former class, initial jurisdiction of the subject-matter of proceedings being made to appear, another court will not, by way of collateral impeachment, look behind the judgment for errors of judgment, either in matters relating to jurisdiction or otherwise, while in the latter class the court will look behind the judgment to ascertain whether there appears on the. face of the proceedings every requisite to sustain the judgment, and, if these requisites appear on the face of the proceedings of the inferior tribunal, the judgment cannot be collaterally assailed.

8. In controversies for the determination of title of real estate,. the decree of probate of a will by any court is not conclusive, but, under the statute, such probate is only *prima facie* evidence of the validity of the will, unless brought after seven years, &c.

9. The jurisdiction of the probate of wills conferred by the Orphans Court act on the surrogate court is essentially the same probate jurisdiction formerly exercised by the ecclesiastical courts of England and there administered by the ordinary and his surrogate and the metropolitan.

10. In view of Orphans Court act (*3 Comp. Stat. 1910 p. 3872 §§ 156, 158*), relating to conclusive effect of probate of wills by surrogate, and in view of the history and origin of the probate of a will, a grant of probate by the surrogate is not a judgment of an inferior court, and under section 13 (*3 Comp. Stat. 1910 p. 3816*), imposing the alternative duties of probating the will, if no doubts arise on the face of the will, and sending on citation to parties, &c., to the Orphans court if a doubt arises on the face of the will, the determination of the alternative is an exercise of judicial function, determining jurisdiction and not subject to collateral attack by an amended defensive pleading, in a suit to construe a will so as to set up the fact that the will was doubtful on its face, precluding probate by the surrogate.

11. Laches may be predicated on delay in ascertainment of one's rights, when the duty and opportunity of ascertainment exists.

12. Under Orphans Court act, providing that a surrogate shall not probate a will if doubtful on its face, and that an appeal shall be taken in three or six months, an heir failing for over four years to attack the probate of a will is guilty of laches, where he at all times could have ascertained the facts.

On bill for construction of will. Hearing on motion of defendant G. Walter Lees to amend answer and cross-bill.

The bill is filed by complainants as executors of the last will and testament of Henry C. Lees, deceased, and seeks the construction of certain provisions of the will of testator to enable the executors to properly discharge their duties as such. The bill sets forth the death of said Lees, testate, in May, 1910; the probate of his will by the surrogate of the county in which testator resided; the issuance of letters of executorship to complainants and the terms of the will; and prays for construction of certain of its provisions.

Defendant G. Walter Lees, one of the sons of testator, has filed an answer and cross-bill. The answer admits the probate and letters of executorship and asserts a construction of the will favorable to him; the cross-bill, which is filed as a part of the answer, sets forth the will, its probate and letters to complainants and seeks to charge complainants with certain liability which it is alleged is not recoverable in the orphans court by reason of the limited jurisdiction of that court in matters of construction of wills. An answer has been filed by complainants to the cross-bill and a general replication has been filed to the answer of defendants.

Shortly prior to the time set for final hearing an application was made by defendant G. Walter Lees for leave to amend his answer and cross-bill. The amendment now proposed withdraws from the answer that part which admits probate of the will and the granting of letters and withdraws that part of the cross-bill which asserts probate and issuance of letters to complainants, and substitutes therefor averments for both the answer and cross-bill, to the effect that the surrogate was without jurisdiction to admit the alleged will to probate or grant letters thereon. The proposed amended pleading sets forth specifically and in detail the physical condition and appearance of the will when it was presented to the surrogate for probate, and the claim is now made that these averments adequately disclose that doubts arose on the face of the will when it was presented for probate which denied to the surrogate jurisdiction to admit it to probate. The proposed amended cross-bill seeks an accounting from complainants to cross-complainant, as an heir, for moneys received and expended by complainants.

*Messrs. Ott & Carr,* for the motion.

*Messrs. Marter & Rose, contra.*

LEAMING, V. C.

By the amended answer and cross-bill which defendant now seeks to file, this court is asked to disregard the official probate of a will, and to treat the will as a nullity, and refuse to construe its provisions, and to require the persons who have been appointed executors of the will to account to an heir for his share of the personal estate of the deceased which has come to their hands. If the averments of the proposed amended pleadings are clearly inadequate to afford any part of the relief sought, it is obvious that the application to amend should be denied, for no benefits can be received through an impotent pleading.

It is manifest that the accounting which defendant seeks through his proposed amended pleading cannot be entertained. Should the probate of the will be set aside or disregarded an heir, as such, does not thereby become entitled to an accounting

for a share of the personal property of the deceased which has come to the hands of others. Such an accounting must be in behalf of an administrator. But, disregarding that infirmity of the proposed pleading, the inquiry is presented whether the averments of the proposed pleading are adequate to enable this court to disregard the probate of the will in this proceeding.

It has been repeatedly held in this state that a surrogate, in admitting a will to probate, holds a court and exercises judicial functions in the field prescribed by statute, and that his decree or order of probate is to be reviewed by appeal and is not subject to collateral attack except for fraud or want of jurisdiction. The proposed amended pleading is a collateral attack upon the judgment of that court, and bases the attack upon the claim that the surrogate was without jurisdiction because of doubts which it is alleged arose on the face of the will which his order admitted to probate; no fraud is charged.

The statutory authority of the surrogate to admit wills to probate is as follows:

"The surrogates of the several counties of this state shall take depositions to wills and admit the same to probate, and grant letters testamentary thereon; but in case doubts arise on the face of the will, or a *caveat* is put in against proving a will, or a dispute arises respecting the existence of a will, the surrogate shall not act in the premises, but shall issue citations to all persons concerned to appear in the orphans court of the same county, which court shall hear and determine the matters in controversy." *P. L. 1898 p. 718; 3 Comp. Stat. p. 3816 § 13.*

No adjudicated case in this state has at any time definitely determined the meaning of the expression "in case doubts arise on the face of the will." In *Myer's Case, 69 N. J. Eq. 793, 796,* the suggestion is made by our court of errors and appeals that it may relate to erasures and interlineations. But, for present purposes, it may be assumed that the averments of the proposed answer and cross-bill disclose with sufficient definiteness that when the will here in question was presented to the surrogate for probate there appeared on the face of the will interlineations or erasures or mutilations which an accurate adjudication would have determined to be suggestive of such doubts as the statute contemplates.

It will be observed that the statute imposes upon the surrogate two alternative duties: If no doubts arise on the face of the will he is required to take the necessary depositions and admit the will to probate if the depositions of the witnesses are by him found sufficient. If doubts do arise on the face of the will he is required to issue citations. The duty is thus specifically imposed upon the surrogate to determine whether doubts arise on the face of the will, for he cannot perform either of the alternative duties required of him without first determining whether doubts so arise; if he determines that such doubts exist, he is required to issue citations; if he determines that doubts do not so exist, he is required to proceed to probate. The determination of the existence or non-existence of such doubts is clearly a function necessary to the exercise of his jurisdiction, and in similar instances it has been regarded as necessarily forming a part of his jurisdiction. *Stanley* v. *Safe Deposit Co., 87 Md. 450; In re Shoenberger's Estate, 139 Pa. St. 132.* In granting probate of the will here in question the surrogate necessarily determined that no doubts arose on the face of the will. For any error in that determination the statute has provided a remedy by appeal, and the question here presented is whether such error can be made the ground of collateral impeachment of the probate in this cause.

Nothing can be said to be more firmly engrafted in our jurisprudence than the principle that in the absence of fraud of the parties a judgment of a court of general jurisdiction cannot be collaterally impeached if the court had jurisdiction of the subject-matter of the controversy and the parties. *White* v. *Crow, 110 U. S. 183.* Jurisdiction, in the sense thus used, has been defined by our federal supreme court to be "the power to hear and determine a cause." In the exercise of the power to hear and determine a cause which has been properly instituted, a court is necessarily called upon to determine matters on which its jurisdiction to proceed and award final judgment depends. It has accordingly been uniformly held that in the application of the principle first stated to cases in which the jurisdiction of a court of general jurisdiction embraces cases of the class to which the case belongs and the collateral attack is based upon a

claim of want of jurisdiction by reason of an alleged error of the court in determining a question upon which its jurisdiction was dependent, the determination of the court touching matters upon which its jurisdiction was thus dependent is conclusive as against such collateral impeachment, whether or not the court has fallen into error in such determination. The case of *Plume* v. *Howard Saving Institution, 46 N. J. Law 211,* was a case of that nature. In that case an administrator to whom letters had been granted by the orphans court had brought suit for the recovery of money deposited in bank by plaintiff's intestate. The defence was a collateral attack on the order of the orphans court appointing plaintiff as administrator and was based on a claim of want of jurisdiction of the orphans court to appoint plaintiff as administrator by reason of want of proof before the orphans court of the death of plaintiff's intestate (the only evidence of death having arisen from a legal presumption of death by reason of long absence), and also other alleged errors of the orphans court touching its own jurisdiction. The supreme court of this state held that the proceeding before the orphans court having been one of a class over which that court had jurisdiction, no inquiry could be made by another court, except on appeal, whether the orphans court had fallen into error in determining facts upon which its own jurisdiction depended. At *p. 229* the opinion proceeds: "Consequently, when the orphans court of the county of Essex, having the matter by the requisite proceedings before it, awarded letters of administration in the present case, it will be intended, by force of the rule of law just stated, that it decided all facts requisite to validate its action. If it had not been deemed to be satisfactorily shown that the alleged intestate was dead, and that he was not resident at the time of his death in this state, and that the plaintiff, although not the original petitioner, could be legally appointed the administrator, the decree which was made could not have been lawfully made, and the consequence is, it must be held in this incidental proceeding that such matters were passed upon by the court. To such a procedure the maxim *'omnia praesumuntur rite esse acta'* is applicable. And with respect to the present inquiry it

matters not at all whether the clause of the statute that regulates the proceedings on application for authority to administer the estate of non-resident decedents was rightly construed by the orphans court, inasmuch if an error exists in that particular it cannot be corrected except in a direct appellate review." The *Lessees of Grignon* v. *Astor, 2 How. (U. S.) 319,* and the several cases there cited, are to the same effect.

The principles above stated relate alike to proceedings *in rem* and *in personam.* In proceedings *in rem* there are no adversary parties, and the only question of jurisdiction in such proceedings is the power of the court over the thing—over the subject-matter before the court—without regard to the persons who may have an interest in it; "all the world are parties." *Lessees of Grignon* v. *Astor, supra.*

If the principles above stated, touching the exemption of judgments of courts of general jurisdiction from collateral impeachment, are applicable to a grant of probate by a surrogate's court, I think it clear the proposed amendment here in question cannot be allowed. The claim made by the proposed amendment is not strictly a claim of want of jurisdiction. As already stated, want of jurisdiction over the subject-matter will subject the judgment of any court to collateral impeachment. The surrogate had jurisdiction of the proceeding before him. The statute confers upon the surrogate a general jurisdiction touching matters of probate of wills and defines his duties and provides an appeal for errors of judgment in the performance of those duties. The concrete claim here made is that the surrogate erred in the performance of his duties in a matter intermediate the inception of his jurisdiction of the cause and his final decree therein, and that his error was in determining that no doubts arose on the face of the will, and was therefore an error in adjudicating a matter upon which his jurisdiction depended. The matter of probate was by proper proceedings brought before the surrogate in a case of a class within his jurisdiction and his jurisdiction over the individual case thereby attached. He was then required to determine, in a case properly before him, whether he should grant probate or issue citations, and to determine this, he was obliged to determine whether doubts arose on the face of the

will which was then before him for the purpose of enabling him to so determine. Thus, with the evidence for and against the existence of doubts before him he determined that no such doubts in fact arose. It is through this claim of error of judgment in the adjudication of a matter which the surrogate was required to adjudicate that it is now sought to collaterally impeach the probate. All of the evidence upon which such an adjudication can be based was before him. Can we now inquire if he fell into error? The real question now presented is not whether doubts arose on the face of the will; it is whether in a collateral proceeding it can be asserted that doubts so arose.

From the decisions already referred to, it is obvious that if the present probate had been granted by the orphans court the present proposed collateral impeachment of that probate could not be entertained; but a distinction has long been recognized between judgments of courts of general jurisdiction and those of certain inferior tribunals of special and limited jurisdiction. Judgments of courts of the latter class have been denied that degree of exemption from collateral impeachment which is uniformly accorded to judgments of courts of the former class. The difference, in this respect, between the two classes of judgments, I understand to be this: In the former class, initial jurisdiction of the subject-matter of the proceeding being made to appear, another court will not by way of collateral impeachment look through or behind the judgment or decree for errors of judgment either in matters relating to jurisdiction or otherwise; while in the latter class, the court may on collateral impeachment look through or behind the judgment to ascertain whether there appears on the face of the proceedings every requisite to sustain the judgment. If these requisites are found to appear on the face of the proceedings of the inferior tribunal, the judgment is regarded as conclusive, as against collateral attack. In *23 Cyc. 1082*, this latter statement is summarized as follows:

"And if the judgment of·an inferior court does affirmatively show the facts necessary to confer jurisdiction, then the same presumptions are indulged in favor of regularity and validity of its proceedings as are extended to the superior courts, and the record can be impeached and contradicted only in like cases and to the same extent."

See, also, *Graham* v. *Whitely, 26 N. J. Law 254, 262; Clark* v. *Costello, 59 N. J. Law 234, 236.*

In *Lessees of Grignon* v. *Astor, supra,* following *Kemp's Lessee* v. *Kennedy, 5 Cranch 173,* and *Ex parte Watkins, 3 Pet. 193,* Mr. Justice Baldwin, in a case involving a collateral impeachment of a decree of a probate court, states the distinction as follows: "The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtains it. A purchaser under it is not bound to look beyond the decree; if there is error in it, of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; so where an appeal is given but not taken in the time prescribed by law. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects; they are not courts of special or limited jurisdiction, they are not inferior courts, in the technical sense of the term, because an appeal lies from their decisions. That applies to 'courts of special and limited jurisdiction, which are created on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction;' that of the courts of the United States is limited and special, and their proceedings are reversible on error, but are not nullities which may be entirely disregarded. They have power to render final judgments and decrees which bind the persons and things before them conclusively, in criminal as well as civil causes, unless revised on error or by appeal. The true line of distinction between courts whose decisions are conclusive if not removed to an appellate court, and those whose proceedings are nullities if their jurisdiction does not appear on their face, is this: a court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence

on which it is rendered, and whose record is absolute verity, not to be impugned by averments or proofs to the contrary, is of the first description; there can be no judicial inspection behind the judgment save by appellate power. A court which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it, whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description; every requisite for either must appear on the face of the proceedings or they are nullities."

It will be noted that the present controversy in no way involves the title to real estate. The bill is filed for the construction of a trust created by the will and involves no issue other than the ascertainment of trust duties of the executors. In controversies for the determination of the title of real estate the decree of probate of a will is not regarded as conclusive, no matter by what court such decree of probate may have been granted. In an action of ejectment, based on a devise of real estate, the probate is only *prima facie* evidence of the validity of the will, unless the action is brought more than seven years from the date of probate, in which case it is under certain restricted conditions made conclusive of the formal execution of the will, and it is regarded as *prima facie* evidence only by reason of the provisions of our statute to that effect. But devises of real estate stand upon a wholly different footing from matters of mere testament, as that term was originally and technically understood. In England the jurisdiction of probate of testaments was early conferred upon the ecclesiastical courts, and there remained, notwithstanding the right, subsequently recognized, of a testator to devise real estate. But the probate was not there regarded as competent evidence in a court of law on an issue involving the title of lands. The jurisdiction to grant probate was lodged in the consistory court of every diocesan bishop, the proof of the will being taken before the ordinary or his surrogate. When the testator owned personal estate of a certain amount in two dioceses—*bona notabilia*—the will was proved before the metropolitan of the province, by way of special prerogative; hence, called the prerogative court. *Rol. Abr. 908; 2 Bl. Com. 508, 509.* These probates before the ordinary or his surrogate, or before the pre-

rogative court, were subject to review by appeal to the arches court and court of delegates, but were regarded as conclusive in the common law courts except as to the title to real estate. The court of chancery at one period refused to grant relief against a probate for fraud, so long as the probate remained unrevoked by the spiritual courts. *Archer* v. *Mosse, 2 Vern. 8; Nelson* v. *Oldfield, 2 Vern. 76; Plume* v. *Beale, 1 P. Wms. 388.* But a devise of real estate was regarded as in the nature of a convey- ance by statute—as a conveyance declaring the use to which the land should be subjected; the difference between such a conveyance and a conveyance by deed being that the former required the acutal subscription of witnesses. *3 Bl. Com. 378, 501.* The probate jurisdiction of the ecclesiastical court being limited to matters of personal property, it necessarily fol- lowed that in an action of ejectment by a devisee the probate was not regarded as effective to establish the validity of the will, and its validity as a conveyance accordingly formed a part of the issue presented. In harmony with this conception of a devise a statute was passed by the general assembly for the east province of New Jersey which met in March, 1682, as follows:

"That all wills in writing, attested by two credible witnesses, shall be of the same force to convey lands, as other conveyances being regis- tered in the Secretaries office within this Province, within forty days after the testator's death." *L. & S. Grants and Concessions 236.*

And in 1713 and 1714 a similar statute declared that all wills thereafter made in the manner provided by the act, and regularly proved and entered upon the books of record or registers in the secretary's office, should be sufficient to devise and convey land as effectually as if the testator had conveyed the same in his lifetime, and that the books in which they were registered or recorded might be given in evidence and should be accepted and be sufficient evidence at all times and places. *Pat. L. 5.* After our independence, the act of December 16th, 1784 (*Pat. L. 59*), established our present orphans court. By section 4 of that act the ordinary was directed to appoint but one "deputy or surrogate" for each county. By section 15 the powers and duties of the surrogate, touching the

probate of wills, were defined in language essentially the same as the section of our present statute hereinabove quoted. By act of June 7th, 1799 (*Pat. L. 397*), it was provided that the books in which wills were recorded, and also a transcript of the record duly certified, should be received in evidence in courts and be as effectual as if the original will should be "then and there produced and proved;" and by act of November 9th, 1803 (*Bloomf. 96*), the surrogate was required to record the proofs of wills, and by section 3 of that act a form for letters testamentary was prescribed and a provision added that probates of wills and letters of administration granted by the surrogate should have the same validity and effect as probates of wills and letters of administration issued by the register of the prerogative office in the name of the ordinary, with the seal of office affixed. In *Snedekers* v. *Allen* (*1806*), *2 N. J. Law 35*, this statute, and the statute of 1713 and 1714, above referred to, were urged as operative to render the record of the will and probate conclusive in an action of ejectment; but it was held to render the record only *prima facie* evidence in a controversy touching the title to real estate. In *Harrison* v. *Rowan* (*1820*), *3 Wash. C. C. 580; 11 Fed. Cas. 658*, District Judge Pennington stated: "That until the law of 1784 [Orphans Court act above referred to] the jurisdiction of the ordinary was always considered, in this state, as being similar to that of the ecclesiastical court in England, and confined entirely to testaments of personal estate. That the validity of a will, in relation to real estate, was open for decision of the common law courts, upon a trial in ejectment or upon an issue of *devisavit vol non*, directed out of chancery. That the act of 1784 made no alteration in this respect; and that it has always been so understood, and such has been the practice." Circuit Justice Washington, in the same case, concurred in that view. See, also, *Foster* v. *Joice, 3 Wash. C. C. 498; 9 Fed. Rep. 555*, where Circuit Justice Washington stated that but for the prevailing view of our state courts to the contrary he would deem the legislation above referred to operative to render a decree of probate conclusive as to a devise of land when the validity of the will should come in question incidentally in another court. In *Den* v. *Ayers, 13 N. J. Law 153*, it was again pointed out that

the probate jurisdiction conferred by our Orphans Court act included personal estate only and was not operative to establish title to real estate. That was an action of ejectment brought by a devisee under a will which had been denied probate by the orphans court. It is there held as follows: "The decree of the orphans court was incompetent evidence and was properly overruled. The jurisdiction of that court upon a *caveat* extends to a will as a will of personal estate, not of real estate. The existence and validity of the instrument as a will of real estate are open for trial in an action of ejectment, notwithstanding any decree of the orphans court either for or against it. The doctrine has been long settled here, and our practice has been uniform and consistent." In *Allaire* v. *Allaire, 37 N. J. Law 312,* it was again pointed out that the legislation above referred to made the probate of a will no more than *prima facie* evidence of its validity in an action to determine the title to real estate. So far as the present inquiry is concerned, our statutes at this time will be found to be essentially the same as the statutes above referred to.

From the decisions already referred to, it is clear that the jurisdiction of probate of wills conferred by our Orphans Court act on our surrogates courts, orphans court and ordinary, has been uniformly regarded as essentially the same probate jurisdiction formerly exercised by the ecclesiastical courts of England and there administered by the surrogate, ordinary and metropolitan, and I think it may be said that the degree of conclusiveness attributed to the grants of probate of the ecclesiastical courts, except upon appellate review, in all matters in which the title to real estate was not involved, has been always understood to obtain as to the similar grants of probate in this state by either the surrogate's court, orphans court or prerogative court.

A grant of probate may thus be said to be peculiar to itself, and, when considered with reference to its origin, history and purpose, it seems impossible to regard it, by whatever court issued, as a mere judgment of an inferior court whose judgments are denied the conclusive force attributed to the judgments of superior courts. Nor can the surrogate's court be regarded as a court of inferior jurisdiction when considered in connection with the, duties which it is required to perform. Its grants of pro-

bate of wills and of letters of administration are necessarily made the basis and foundation of the settlement and distribution of all estates of all deceased persons; the nature and importance of the powers conferred and duties imposed by the letters issued renders their conception as mere shadows of authority impossible. *2 Nels. Abr. 1302.*

The decisions of our courts may be said to confirm these views. In *Quidort's Administrator* v. *Pergeaux, 18 N. J. Eq. 472,* complainant, as administrator, had procured a money judgment against a defendant. He then filed a bill in this court in aid of his judgment at law to subject the equitable estate of the judgment debtor in certain land to the lien of the judgment. Defendant sought to attack the validity of the letters of administration by evidence that decedent left a will. Touching that offer the court said: "This evidence cannot be received, as the question of the right to administration cannot be examined here. The granting administration is exclusively with the ordinary and his surrogates. The grant is a proceeding *in rem,* in the strict sense of that term. It constitutes the person to whom it is granted the administrator, whether rightfully or wrongfully granted; and it cannot be inquired into here collaterally. The act of the surrogate can only be reviewed by appeal to the orphans court, or prerogative court. Like the acts of all other regularly-constituted tribunals, the acts of the surrogate cannot be impeached collaterally. The only question that can be made is, whether he had jurisdiction. If the supposed intestate was not dead, or if letters lawfully granted to someone else were in existence, the grant would be void." It will be observed that the proceedings before the surrogate are here placed upon precisely the same plane as those of the orphans court, or even common law courts of general jurisdiction, so far as collateral impeachment is concerned. As is held in *Plume* v. *Howard Savings Institution, supra,* errors of judgment in all matters which the statute requires the tribunal to adjudicate, including matters upon which jurisdiction is dependent, in a proceeding lawfully instituted of a class within the jurisdiction, cannot be reviewed except by appeal. If the supposed testator or intestate was not dead at the time probate proceedings were instituted, probate jurisdiction

would necessarily fail, no matter by what court asserted, for in such case the proceedings would be void from the very beginning; and the same would necessarily be true of letters of administration if prior letters *"lawfully granted"* to someone else were in existence." In *Ryno's Executors* v. *Ryno's Administrator, 27 N. J. Eq. 522,* our court of errors and appeals approves the language above quoted from *Quidort's Administrator* v. *Pergeaux. In re Evans, 29 N. J. Eq. 571, 575,* it is again pointed out: "That the proceedings of the surrogate, in admitting a will to probate, are those of a regularly-established court, and are to be treated accordingly, and that they can only be reviewed by appeal." "If the probate be irregular or voidable for any cause, the remedy is by appeal, or by proceedings for the revocation of the letters testamentary." In *Steele* v. *Queen, 67 N. J. Law 99,* our supreme court again recognizes that the surrogate acts judicially and holds a court in probating wills, and declares that its decree is in a proceeding *in rem* and is conclusive and final, unless reversed on appeal by a court of appellate jurisdiction. In that case *mandamus* was sustained to compel the surrogate as a "judge" to issue an exemplified copy of letters pursuant to the federal statute. In *Murray* v. *Lynch, 64 N. J. Eq. 290, 302,* Chancellor Magie, after pointing out the judicial functions which the statute imposes on the surrogate, says: "The power to issue citations in that class of cases [doubts arising on the face of the will] will not arise except on an adjudication of the surrogate that such doubts are raised on the face of the will." In *Russell's Case, 64 N. J. Eq. 313, 317,* the same chancellor, sitting as ordinary, recognizes the principles defined in *Plume, Administrator,* v. *Howard Savings Institution, supra,* touching the conclusive effect that must be given to an order of the orphans court, as against collateral impeachment, in a matter in which that court has necessarily passed upon its own jurisdiction in making the order thus brought in question. While in *Plume, Administrator,* v. *Howard Savings Institution,* the order which it was sought to impeach in a collateral proceeding was an order made by the orphans court, the learned chief-justice, in delivering the opinion of our supreme court, said: "That a conclusive efficacy should be given to letters of administration by whatever tribunal issued,

so far as merely collateral impeachment is concerned, is a plain dictate of sound public policy."

Turning to our statute, as it presently exists, we find that by section 156 of our Orphans Court act (*3 Comp. Stat. p. 3872*) it is provided:

"The probate of wills, and letters testamentary, of administration and of guardianship, issued by the surrogate under this act, shall have the same validity and effect as the probate of wills and letters of administration and guardianship issued by the register of the prerogative office in the name of the Ordinary, with the seal of office affixed,"

and section 17 of the same act provides the form for letters testamentary to be issued by the surrogate, by which form the surrogate is made to certify under his hand and seal of office that the will, a copy of which is to be annexed to the letters, has been proved before him by the executors therein named, and that the executors are duly authorized to take upon themselves the administration of the estate of the testator, agreeably to the will. By section 158 of the same act the surrogate is required to record all wills proved before him or before the orphans court, together with the proofs thereof, and also the letters testamentary by him issued; this record, and certified copies thereof, are given the same force and effect as like records in the prerogative office, and are to be received in evidence in all courts of this state. The record of the will, the proofs taken, and the statutory certificate of probate, are thus made the statutory memorial of the surrogate's judgment of probate, and this record is by statute given the same force and effect as a like record in the prerogative office, and is ordered to be received in evidence in all courts of this state.

In view of the decisions and legislation above referred to, it seems impossible to find justification for looking behind this judgment of probate in a collateral proceeding, in a case in which the judgment contains all matters specified by the statute for that purpose, for alleged errors of the surrogate in matters jurisdictional, or otherwise, which the statute required the surrogate to pass upon pending the proceeding before him and which he has necessarily passed upon, with the evidence before him, be-

fore awarding the judgment of probate. In the present case, no
claim is made that the judgment of probate fails in any respect
as to the statutory requirements touching the judgment. These
provisions of the statute specifically defining the record which
shall be made, and declaring the force which shall be given to
the probate record when so made, are clearly inconsistent with
the idea that the judgment of probate when so made and re-
corded can be properly classed as to its force and effect with those
of special proceedings of certain inferior tribunals which may be
set aside or disregarded when or because they fail to disclose on
their face all matters necessary to their validity. I think it must
be held that a grant of probate and letters testamentary made
by a surrogate which conforms to the requirements of the statute
as to form and proofs is as conclusive as a similar grant made by
the ordinary, and that letters so issued cannot be impeached,
except for fraud, in a collateral proceeding relating to personal
property, for errors of judgment of the surrogate in matters upon
which his jurisdiction may have been dependent, or otherwise,
in so far as such alleged errors of judgment relate to matters in-
termediate the inception of his jurisdiction over the individual
proceeding and the final judgment rendered by him therein.

Another circumstance should be also considered. The will
here in question was probated more than four years ago, and
since that time the executors have been executing their trust.
The Orphans Court act (section 202) provides an appeal from
a surrogate's grant of probate and limits the period of appeal to
three months for residents and six months for non-residents;
and it is a purely legislative function to prescribe such limita-
tions and their consequences. *Myer's Case, 69 N. J. Eq. 793,
796*. The statute thus contemplates that errors of the surrogate
in granting probate shall be reviewed by appeal within the period
specified. Defendant claims that the alleged error of the surro-
gate has been only recently brought to his attention; but, as-
suming that to be true, the fact remains that the opportunity for
ascertainment has at all times existed. He knew of the death of
his father and of the probate of the will, and by due diligence
could have discovered, pending the period allowed for appeal, all
that he now claims to know. Laches may be equitably attributed

to delay in the ascertainment of one's rights, when the duty and opportunity of ascertainment exist, to the same extent as for delay in the assertion of such rights after their ascertainment. It may well be doubted whether this court can properly entertain defendant's claim after so long a delay.

It should also be observed that this attack upon the probate is not made in this court, by reason of any peculiar jurisdiction exercised by a court of equity over matters of this nature. No fraud is alleged. *Vincent* v. *Vincent, 70 N. J. Eq. 272.* The proposed defence must be here treated the same as a similar defence made in a court of law to an action of replevin brought by the executors to recover personal property of the testator.

I am convinced that leave to file the proposed amended pleading must be denied.