25 N.J. Super. 358 (1953)
96 A.2d 289
GEORGE M. WALLHAUSER, AS SUBSTITUTED ADMINISTRATOR C.T.A. OF THE WILL OF RACHEL A. WALLHAUSER, DECEASED, AND INDIVIDUALLY, PLAINTIFF,
v.
CLARENCE S. RUMMEL, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF JULIA A. VOGT, DECEASED, AND INDIVIDUALLY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 7, 1953.
*360 Messrs. Riker, Emery & Danzig (Mr. Charles Danzig appearing), attorneys for plaintiff.
*361 Messrs. Lindabury, Steelman & Lafferty (Mr. William Rowe appearing), attorneys for the defendant Clarence S. Rummel, as executor, etc., and individually.
STEIN, J.S.C.
This suit is brought for construction of the will of Andrew G. Vogt, deceased, and for accounting by the defendant Clarence S. Rummel as executor of the will of Julia A. Vogt, deceased, and individually, of the assets that came into his possession and into the possession of Julia A. Vogt from the estate of Andrew G. Vogt and for payment thereof to the plaintiff.
The accounting required to be rendered by the defendant must abide the determination of the legal issues raised in the pretrial order which are as follows: (a) the nature of the estate given to Julia A. Vogt by the will and codicil of Andrew G. Vogt; (b) is the plaintiff, individually or as substituted administrator c.t.a. of the will of Rachel A. Wallhauser, deceased, disqualified from maintaining this action by reason of the contentions of the defendant pertaining to laches, unclean hands, and the effect of exhibits D-3, D-4 and D-5?
Under (a) plaintiff contends that by the terms of the will and codicil of Andrew G. Vogt the estate given to Julia A. Vogt became divested upon the death of Julia A. Vogt in favor of Rachel A. Wallhauser, in the event of the testamentary incapacity at any time of said Julia A. Vogt, and that such testamentary incapacity having occurred the estate given to Julia A. Vogt by the will and codicil of Andrew G. Vogt was divested upon the death of Julia A. Vogt and became absolute in Rachel A. Wallhauser and ultimately became vested in the plaintiff, individually, and as substituted administrator c.t.a. of the will of Rachel A. Wallhauser.
Under (a) and (b) it is the defendant's position and contention that under the will and codicil of Andrew G. Vogt the estate given to Julia A. Vogt was absolute and not subject to divestment; that under the will and codicil of Andrew G. Vogt, the complaint sets forth no cause of action; that by virtue of exhibits D-3, D-4 and D-5, plaintiff in his *362 individual capacity as well as in his fiduciary capacity, accepted performance of said exhibits D-3 and D-4 in complete discharge of any rights he may have had individually or in his fiduciary capacity against the estate of Julia A. Vogt; that as a condition to seeking relief in this suit, plaintiff should have tendered into this court the assets received by him under the will of Julia A. Vogt that were formerly assets of the estate of Andrew G. Vogt for the benefit of all persons entitled thereto, and that his failure to make such tender constitutes inequitable conduct barring relief herein; that during the period after the death of Andrew G. Vogt the said Julia A. Vogt, on the assumption of absolute ownership of the assets of Andrew G. Vogt, and with the knowledge of plaintiff, in her lifetime disposed of some of the assets of Andrew G. Vogt to an extent unknown and unascertainable, and proof of transactions relating to the disposition of such assets, known to said Julia A. Vogt, Rachel A. Wallhauser, Henry J.F. Wallhauser and H. Andrew Wallhauser, is not available; that plaintiff at all times subsequent to the death of Andrew G. Vogt had notice of all facts set forth in the complaint herein and that by reason of the foregoing, plaintiff is guilty of laches and of unclean hands and is barred from the relief he claims.
As to these contentions of the defendant the plaintiff claims that he had no knowledge either of the provisions or of the legal effect of the provisions of the will of Andrew G. Vogt on the assets of Julia A. Vogt which she received from her husband until shortly before the institution of the present action, and that he did not know nor was informed at the time he went into possession of the premises known as 76-78 East Park Street, Newark, New Jersey, or when he executed exhibits D-3, D-4 and D-5, or at the time he received and took possession of any of the gifts given to him by the will of Julia A. Vogt, that any of the property that Julia A. Vogt attempted to dispose of by her will to the plaintiff in his individual capacity did not belong to her by reason of the terms of the will of Andrew G. Vogt, and that he acted without full knowledge of the facts and circumstances and *363 without consciousness of the effect that is presently ascribed to the exhibits D-3, D-4 and D-5 and acts done by the plaintiff individually in performance of the terms of such exhibits, and that he acted in ignorance of his rights under the will of Andrew G. Vogt and under mistake of the real nature and extent of his individual rights thereunder; that such exhibits do not purport to and do not settle plaintiff's claim as substituted administrator c.t.a. of the estate of Rachel A. Wallhauser, deceased, to the assets of Andrew G. Vogt nor plaintiff's individual claims under the will of Andrew G. Vogt, and that to the extent such agreements may include such claims, such agreements go beyond the intention of the parties thereto, are without consideration, and without knowledge by the plaintiff, individually, or as substituted administrator, that he had any claim under the will of Andrew G. Vogt or the extent and nature thereof; that his obligation to tender into court the assets received by him under the will of Julia A. Vogt which were formerly assets of the estate of Andrew G. Vogt for the benefit of all persons entitled thereto, depends upon the ultimate determination by the court of the legal issues, and that plaintiff is ready, willing and able to account for all assets received from the estate of Julia A. Vogt to the persons entitled thereto in the event the court determines that the estate of Julia A. Vogt under the will of Andrew G. Vogt terminated upon the death of Julia A. Vogt; that it was not until the death of Julia A. Vogt on January 14, 1948 that plaintiff became entitled to distribution of the assets of Andrew G. Vogt and that he did not know nor was informed until some time after June 27, 1951 of the nature or extent of his interest under the will of Andrew G. Vogt, and upon being advised of his interest, individually, and as substituted administrator as aforesaid, in the estate of Andrew G. Vogt, he acted promptly in the premises and brought this suit.
Andrew G. Vogt and Julia A. Vogt were husband and wife. Andrew G. Vogt died a resident of Monmouth County on November 15, 1934, leaving a last will and testament and codicil thereto which was duly admitted to probate. After *364 directing the payment of his debts and funeral expenses, Andrew G. Vogt bequeathed unto his sister, Rachel A. Wallhauser, sufficient of guaranteed mortgages, bonds, real estate mortgages and bonds accompanying the same, stocks and bonds in his possession to aggregate a par value of $60,000, irrespective of market value. If his sister predeceased the testator, the gift was to go to her husband, Doctor Henry J.F. Wallhauser. If both should predecease the testator, then the bequest was to go equally to testator's nephews, Doctor H. Andrew Wallhauser and George M. Wallhauser. A codicil made a little more than a year later confined the source of the gift to guaranteed mortgage bonds, but made no other change. The will then provided:
"Third. All and whatsoever the rest, residue and remainder of my estate, real, personal and mixed wheresoever located and found, I give, devise and bequeath unto my beloved wife, Julia A. Vogt, to her, her heirs, executors, administrators and assigns, forever, in fee simple absolute, with the following exception:
Inasmuch as I with my wife Julia A. Vogt often undertake periods of travel, and also that together or singly we come and go from place to place when occasion requires, by various means of transportation; and being aware of the possibility of our coincident death from casualty, or of testamentary incapacity in either or both of us arising at any time, in the event of the coincident death of death as a result of the same casualty of myself and said wife, or of her testamentary incapacity at any time, then upon the death of the said Julia A. Vogt I give, devise and bequeath all and whatsoever my residuary estate to my sister, Rachel A. Wallhauser, to her, her heirs, executors, administrators and assigns, forever.
In the event of our simultaneous death as hereinbefore set forth, then and in that event, I name and appoint the said Rachel A. Wallhauser sole executrix of this my last will and testament in lieu and stead of the said Julia A. Vogt then deceased, and I order and direct that no bond be required or taken from my said executrix in connection with her administration of my estate."
It is the foregoing paragraph that presents the principal legal issue to be determined by the court, namely, the nature of the estate given to Julia A. Vogt by the will of Andrew G. Vogt.
Both Julia A. Vogt and Rachel A. Wallhauser survived Andrew G. Vogt. Rachel A. Wallhauser died on April 10. *365 1937, leaving a will admitted to probate on June 28, 1937. By her will Rachel A. Wallhauser left her entire estate to her husband, Henry J.F. Wallhauser, "with full power to use or consume any part of the whole thereof," and further provided that "upon the death of my said husband, I give, devise and bequeath to my sons H. Andrew Wallhauser and George M. Wallhauser, so much of my estate as then remains, in equal shares." It is not necessary to determine whether the remainder to H. Andrew Wallhauser and George M. Wallhauser is valid under the principle of law most recently expressed in Fox v. Snow, 6 N.J. 12 (1950), because if Rachel A. Wallhauser's interest in the estate of Andrew G. Vogt vested absolutely in her husband Henry J.F. Wallhauser and the remainder to her sons was void by reason of Fox v. Snow, supra, then these same two remaindermen succeed to the interest, if the same was absolute, vested in their father, Henry J.F. Wallhauser, by virtue of the terms of his will which left his entire residuary estate to his sons George M. Wallhauser, the plaintiff, and H. Andrew Wallhauser. Moreover, on August 28, 1947 the plaintiff George M. Wallhauser was appointed as substituted administrator c.t.a. of the estate of Rachel A. Wallhauser and as such substituted administrator c.t.a. he became obligated to complete the administration of the estate of Rachel A. Wallhauser by collecting the assets to which said estate was entitled and distributing the same to the persons entitled thereto according to law. The plaintiff's title as fiduciary and individually is unimpeachable if it is determined that Julia A. Vogt had only a qualified and not an absolute estate under the will of Andrew G. Vogt.
The estate of Andrew G. Vogt consisted of real estate valued at $39,592.50, cash and stocks and bonds of $273,500.30, making a total of $313,092.80. The debts were insignificant. All of these assets came into the possession of Julia A. Vogt, who qualified as executrix under the will of Andrew G. Vogt; she never filed an inventory of the estate of Andrew G. Vogt or an accounting thereof. Julia A. Vogt died on January 14, 1948, leaving a last will and *366 testament that was admitted to probate on March 23, 1948. The defendant Clarence S. Rummel qualified as her executor and took possession and control of the assets of the estate of Andrew G. Vogt. Defendant was also the residuary legatee under the will of Julia A. Vogt and he has filed no accounting of either the estate of Andrew G. Vogt or of Julia A. Vogt.
On or about February 14, 1941 the defendant Clarence S. Rummel petitioned the Court of Chancery for the issuance of a commission in the nature of a writ de lunatic inquirendo to inquire whether Julia A. Vogt was a mental incompetent. The jury found on March 3, 1941 that "the said Julia A. Vogt at the time of taking this inquisition is a mental incompetent and of unsound mind, and does not enjoy lucid intervals, so that she is not capable of governing herself, her lands and tenements, goods and chattels and that she has been in the same state of mental incompetency for the space of eight months last past and upwards," and by decree dated March 17, 1941 the aforesaid proceedings were confirmed. Letters of guardianship were thereafter issued to Homer C. Zink and Clarence S. Rummel, the defendant herein.
From the date of the aforesaid adjudication until the date of her death on January 14, 1948 the said Julia A. Vogt was institutionalized and because of her mental condition was unable to attend to her affairs or to transact business. During this period the aforesaid guardians managed her property and duly filed their accountings. The assets administered by the aforesaid guardians included the assets of Andrew G. Vogt.
One of the assets owned by Andrew G. Vogt at the time of his death consisted of premises known as 200 Elberon Avenue, Allenhurst, New Jersey. The guardians of Julia A. Vogt sold this property in 1945 while Julia A. Vogt was an incompetent. Their grantee entered into a contract of sale for these premises and the vendee applied for a mortgage loan. By letter dated June 27, 1951 counsel searching the title raised a question as to the interest of Julia A. Vogt under paragraph Third of the Will of Andrew G. Vogt. It *367 is in proof that until the plaintiff received this letter that neither he nor anyone acting on his behalf with respect to any of the matters set forth in the affirmative defenses was conscious of the terms of the will of Andrew G. Vogt or appreciated that the estate of Julia A. Vogt was subject to defeasance by her testamentary incapacity at any time. When the plaintiff became aware of the nature of the interest given to Julia A. Vogt by the will of Andrew G. Vogt, he instituted these proceedings to obtain a construction of said will and an accounting from the defendant.
The decedent Andrew G. Vogt was originally married to one Emma L. Vogt (nee Schmidt), a sister of Julia A. Vogt. Emma died in 1916 and shortly thereafter Andrew G. Vogt married his deceased wife's sister, Julia. A sister of Emma and Julia known as Mary E. Stengel had been adjudicated a lunatic in 1896 and Julia A. Schmidt before her marriage to Andrew G. Vogt had been appointed as the guardian of Mary E. Stengel. Mary E. Stengel died intestate on July 13, 1919 and letters of administration were issued to Julia A. Vogt who, at that time, was already married to Andrew G. Vogt.
To the admission of this extrinsic evidence the defendant reserved the right to object, but it is felt that it is material. The selection of the contingency such as "her testamentary incapacity at any time" is of such an exceptional occurrence that some explanation therefor may be found in the insanity of a sister of the testator's wife  an event that may have caused the testator to suspect that there was a streak of insanity in the family that might become manifest in his own wife and sheds some light upon the circumstance that caused the testator to select the testamentary incapacity of his wife as a divesting contingency. I feel that for that purpose such testimony is admissible.
(A) As to the nature of the estate given to Julia A. Vogt.
The plaintiff contends that the estate given to Julia A. Vogt by the will of her husband, Andrew G. Vogt, was vested subject to divestment upon her death in the event of her testamentary incapacity at any time; that the divesting *368 contingency specified by the testator has occurred and that by reason thereof the estate given to Julia A. Vogt became divested upon her death and became absolute in Rachel A. Wallhauser.
In Griscom v. Evens, 40 N.J.L. 402 (Sup. Ct. 1878), affirmed 42 N.J.L. 579 (E. & A. 1880), it was held:
"By the statute, a writing is made indispensable to the existence of a will, and what has been written cannot be added to, detracted from, or altered by extrinsic evidence. The functions of the court are to ascertain the intention of the testator from the language of the will. Extrinsic evidence may be resorted to, which, in its nature and effect, is simply explanatory of what the testator has written, but no evidence can be received for the purpose of showing what he intended to have written. Wigram on Wills, § 9. In every case of a controverted construction, the sole question is non quod voluit sed quod dixit. Extrinsic evidence of the circumstances, situation and surroundings of the testator, and of his property, is legitimate to place the court which expounds the will, in the situation of the testator who made it, and thus enable the court to understand the meaning and application of the language he has adopted; but the testator's intention must ultimately be determined from the language of the instrument, as explained by such extrinsic evidence, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention inconsistent with the writing itself. * * *"
I am of the opinion that the nature of the estate given to Julia A. Vogt may be determined by the language of the will, without resort to extrinsic evidence, if the words used in the will are given their strict and primary acceptation unless it appears from other parts of the will that the testator has used them in a different sense. Examination of the will discloses that the testator did not give his wife an absolute estate free from a divesting contingency, but instead gave his wife an estate "in fee simple absolute, with the following exception: * * *." That testator did not intend his wife was to enjoy a fee simple absolute under all circumstances is clearly demonstrated by the testator's expression "with the following exception" by the use of which he expressed a limitation. That fee may be reduced to a lesser estate by language following the words creating the fee is well settled.
*369 In West Side Trust Co. v. Giuliano, 106 N.J. Eq. 475, (Ch. 1930), Vice-Chancellor Backes, in construing the will of Antonio Giuliano, said:
"In the will under consideration the testator, after giving to the nephew what otherwise would be an absolute estate, cut it down and put an end to it at the nephew's death by giving the residue to his issue and over to the nieces upon failure of issue. The gift in remainder, though it be in a different paragraph, is as pregnant of meaning as the language of the absolute gift to the nephew, and cannot be ignored or discarded because it is in conflict with the initial gift. Apparent conflict in provision must be reconciled so that the whole may stand and all parts of the will be given their full significance. The applicable rule of construction is declared in Jones' Executors v. Stites, 19 N.J. Eq. 324, where the Chancellor, in addressing his remarks to the language of a will substantially like the one under consideration, said: `The terms on which this residue is given to the two daughters, would give them the absolute estate, were it not for the subsequent limitations; they are adapted to that purpose, and nothing but a clear expression of a different intent would control them. But it is well settled, that a devise of lands or bequest of chattels, by words which clearly would give the absolute estate, will be construed into a devise or bequest for life only, if the will contains words giving it to another upon the death of the first taker.'"
Vice-Chancellor Leaming in Sayre v. Kimble, 93 N.J. Eq. 30 (Ch. 1921) held in that case:
"Although by the seventh clause of the will an absolute estate in fee in the residuary estate is expressly given to Enos and Evin, it was testator's privilege to limit that estate by a subsequent valid provision that the estate should go over to another person upon the happening of a specified contingency. An estate in fee, when so limited, is still a fee for the reason that it will last forever if the contingency does not happen, but so long as it is possible that the contingency may happen, it is a determinable fee. * * *"
In the instant case the reasons for qualifying the fee simple absolute given by the testator to his wife is explained following the exception. In explanation of the exception the testator recalls the periods of travel with his wife and the possibility of coincident death from casualty, or of testamentary incapacity in either or both of them arising at any time, and then in the event of the coincident death as a result of the same casualty to himself and his wife, or of her *370 testamentary incapacity at any time, then upon the death of his wife his residuary estate was to go to his sister, Rachel A. Wallhauser. He further provided that in the event of the simultaneous death of himself and his wife, his sister, Rachel A. Wallhauser, was to be his sole executrix in lieu and instead of his wife, to serve without bond. The qualifying language of the gift to the wife was immediate and inseparately annexed to the gift and shows clearly that no absolute fee was intended or given if the events falling within the exception expressed by the testator occurred. There is nothing ambiguous about the term "testamentary incapacity."
"In this state the gauge of testamentary capacity has been stated to be whether the testator can comprehend the property he is about to dispose of; the natural objects of his bounty; the meaning of the business in which he is engaged; the relation of each of these factors to the others, and the distribution that is made by the will." Gellert v. Livingston, 5 N.J. 65 at p. 73 (1950).
The term "testamentary incapacity" can only be the opposite of the term "testamentary capacity." It is clear from the proofs that Julia A. Vogt had testamentary incapacity within the meaning of the testator's intention and that this contingency having occurred, the estate given to her became divested upon the happening of the event.
In the instant matter I construe the term "at any time" as used by the testator to be co-extensive with the life of Julia A. Vogt, and in the event of testamentary incapacity at any time during her life the divesting contingency expressed by the testator was to become operative upon her death. No children were born of either of the testator's marriage with Emma or Julia and apparently the testator recognizing insanity in the family of his wife provided in the will that should such be the case with his wife at any time his estate should go to his sister on the death of his wife.
Vice-Chancellor Berry in Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444 (Ch. 1941), reiterated the settled law that the power to dispose of property by will includes the right to attach to testamentary gifts such terms, conditions, limitations, *371 or restrictions as the testator pleases, provided they are not contrary to public policy or forbidden by law. "And every presumption will be taken in favor of the validity of conditions and restrictions imposed by a testator; there is no presumption of illegality."
The estate the testator gave his wife was not absolute but on a conditional limitation, i.e. that his wife have no "testamentary incapacity at any time," otherwise the gift to Rachel A. Wallhauser by executory devise was to become effective upon the happening of the stated contingency.
Executory devises depending upon the contingency of the death of the first taker before attaining a certain age or upon the death of the first taker without issue or intestate have been enforced as valid executory devises in many of our reported cases. Den v. Taylor, 5 N.J.L. [*]413 (Sup. Ct. 1819); Kent v. Armstrong, 6 N.J. Eq. 637 (E. & A. 1850); King v. First National Bank of Morristown, 135 N.J. Eq. 319 (Ch. 1944); Kelley v. North Morris Realty Co., 1 N.J. 421 (1949).
When Rachel A. Wallhauser died on April 10, 1937 the testamentary incapacity of Julia A. Vogt had not yet occurred and the interest of Rachel A. Wallhauser in the estate of Andrew G. Vogt was only by way of an executory devise. In Dilts v. Clayhaunce, 70 N.J. Eq. 10 (Ch. 1906), it is stated that an executory devise is "transmissible by grant, devisable by will, or descendible to heirs-at-law." To the same effect is King v. First National Bank of Morristown, supra. Under these authorities it follows that the executory devise in Rachel A. Wallhauser passed under the will of Rachel A. Wallhauser, and the estate of Rachel A. Wallhauser ultimately vested in the plaintiff individually and in his fiduciary capacity as administrator c.t.a. of the estate of Rachel A. Wallhauser, deceased.
(B) Is the plaintiff, individually, or as substituted administrator c.t.a. of Rachel A. Wallhauser, deceased, disqualified from maintaining this action by reason of the defendant's contentions pertaining to laches, unclean hands and the effect of exhibits D-3, D-4 and D-5?
*372 Exhibit D-3 is an agreement dated January 24, 1949, between Clarence S. Rummel, individually and as executor of the will of Julia A. Vogt, and George M. Wallhauser, with respect to paragraph Tenth of the will of Julia A. Vogt in which she gave to Wallhauser, her nephew, certain monies and bonds as well as properties in Newark on East Park Street and Durant Street. The agreement recited that after the execution of her will Julia A. Vogt was adjudged incompetent and that thereafter guardians were appointed for her, and recites that Wallhauser had made claim for distribution, including $100,000 on account of certain bonds and interest thereon from the date of Julia's death, and that the claim was disputed and is by the agreement settled as therein provided.
Exhibit D-4 is dated January 24, 1949, between Rummel, individually and as executor of the estate of Julia A. Vogt, and George M. Wallhauser. The agreement D-3 previously mentioned arrived at under the same date is referred to in this agreement and provides that Rummel at his option may report to the Commissioner of Internal Revenue the settlement arrived at in that agreement by sending to him a copy of the agreement, and that if any federal tax is assessed against Rummel individually and as executor of the will of Julia A. Vogt, Wallhauser agrees to pay the amount of such tax together with interest and penalties, and that agreement makes provision for collateral security for the performance of the agreement, Wallhauser agreeing to deliver to William Rowe and to Irving Riker certain unregistered securities.
Exhibit D-5 is a refunding bond and release signed by Wallhauser to Clarence S. Rummel as executor of the estate of Julia A. Vogt. When these documents were executed, neither the plaintiff nor George Werner and Irving Riker, his counsel, was aware of the construction of the will of Andrew G. Vogt that the plaintiff now urges. Once that construction was brought to plaintiff's attention by the letter Exhibit P 5-A, he acted promptly by the institution of this suit. Here to be considered is the fact that the plaintiff could not have contested the right of Julia A. Vogt to *373 possession of the assets of the estate of Andrew G. Vogt until her death in 1948, for until then she was entitled to possession of these assets as the holder of a legal life estate, an estate that arose upon the event of her testamentary incapacity occurring. The possession of a life tenant cannot count against a remainderman. This is the rule where the statute of limitations is invoked by a life tenant or persons claiming under him, as against a remainderman. Content v. Dalton, 121 N.J. Eq. 391 (Ch. 1937), affirmed 122 N.J. Eq. 425 (E. & A. 1937), and the same rule is applicable if the defense of laches is invoked, as here, for until the remainderman's right to possession and enjoyment ripens there is no possessory remedy available to him against the life tenant. Content v. Dalton, supra.
The cases of Crawford v. Lees, 84 N.J. Eq. 324 (Ch. 1915), and McCartin v. Traphagen, 43 N.J. Eq. 323 (Ch. 1887), cited by defendant in his brief in support of the defense of laches are not applicable. In the Crawford case the bill sought construction of a will; the defendant filed a cross-claim admitting the probate of the will and seeking a construction favorable to him. An application was made to amend the cross-bill to withdraw the admission of probate of the will and to allege that the surrogate was without jurisdiction to admit the will to probate because the physical condition of the will raised doubts on the face of the will when it was presented for probate, thereby depriving the surrogate of jurisdiction. The time for appeal from the order of probate was three months for residents and six months for non-residents, and the defendant had known of the death of the testator who was his father. The will had been probated more than four years before this attack upon the probate of the will. The court refused to entertain a collateral attack on the order of probate because the order under attack was within the jurisdiction of the surrogate's court and the attack upon the order admitting the will to probate was not made in the Court of Chancery "by reason of any peculiar jurisdiction exercised by a court of equity over matters of this nature."
*374 In the McCartin case three trustees, one being the mother of the beneficiaries, released part of mortgaged premises from the lien of the mortgage without consideration. This was done in 1871 and 1872 and was known to some of the beneficiaries at the time, and to all in 1878. One of the trustees died in 1884 and suit was brought in 1886, mainly to surcharge the deceased trustee. The mother was the trustee who had custody of the assets and was friendly with her children. The court would not permit the suit to be maintained some 14 or 15 years after the alleged breach of trust occurred, when the trustee against whom the attack was directed could not explain because of his death the circumstances under which the release was given. In the instant case the plaintiff acted with diligence once his attention was directed to his rights, and the defense of laches is not available against him.
As to the defense of estoppel much of what has been said concerning laches is applicable to the defense of estoppel. Moreover, such knowledge as Mr. Werner obtained in transactions independent of his representation of the plaintiff cannot be imputed to the plaintiff. Notice or knowledge must come to the agent while he is concerned for the principal, and in the course of the same transaction, and if the agent has notice or knowledge only by some other transaction, foreign to the business in hand, the knowledge will not be imputed to the principal unless he would have received the knowledge if the principal were acting for himself. Sooy v. State, 41 N.J.L. 394 (E. & A. 1879).
Again, a legatee's misconception of his rights will not estop him from asserting his legal rights under a will. Morrison v. Dawson, 115 N.J. Eq. 45 (Ch. 1933). Nor will such legatee be estopped from asserting his rights because higher estate and inheritance taxes had been paid because of such misconception. Brown v. Corn Exchange National Bank, &c., Co., 136 N.J. Eq. 430 (Ch. 1945). In the Brown case the legatee was one of the executors and trustees whose duty it was to administer the estate and the trusts created by the will. She misconceived her rights under the *375 will by misconstruing a provision for her benefit. Yet ten years later, a court of equity gave her the full measure the testator intended for her benefit after adjusting losses to the estate resulting from her misconception. It is to be noted that this occurred in a case where the legatee was an active participant in the administration of the estate and whose practical construction of the will caused a change of position to the detriment of the estate. Despite this the court refused to bar her rights on the ground that she was estopped from asserting a construction of the will different from the construction her conduct had ascribed to it. In the case at bar the plaintiff was a stranger to the administration of the estate of Andrew G. Vogt and Julia A. Vogt, completely ignorant of the contents of the will of Andrew G. Vogt or of his rights or the rights of his mother under paragraph Third thereof. Whatever change of position has taken place is not the result of any conduct or the result of any practical construction plaintiff has placed on the will.
Whatever may have occurred that is detrimental to the defendant's position is the result of his own conduct and the result of the construction he has placed on the will of Andrew G. Vogt, and is not imputable to the plaintiff. The defendant knew what assets of Julia A. Vogt came from the estate of Andrew G. Vogt. Exhibit D-6, though prepared by plaintiff, came from the files of defendant's counsel and has likely been in defendant's possession since 1941 when Julia A. Vogt was adjudicated an incompetent, at which time the plaintiff turned his records over to defendant. That exhibit shows the origin of all assets owned by Julia A. Vogt, whether they came from her brother Jacob Schmidt or her husband or were originally hers.
Nor can it be said that plaintiff comes into court with unclean hands, for in his pleadings and in his testimony he offers to account to all persons entitled thereto for the assets he received from the estate of Julia A. Vogt.
Judgment will be entered in favor of the plaintiff, construing the will in conformity with this opinion and directing the defendant to account.