CLARENCE E. VROOMAN, substituted trustee of John R. Elton, deceased,

*v.*

LAURA E. VIRGIL et al.

[Decided April 21st, 1913.]

1. A testator by his will provided as follows:

"*Second.* I give, devise and bequeath to my niece Lizzie E. Whitan the use of two thousand dollars during her natural life said money to be kept safely invested for her use and the interest semi-annually to be paid her by my executors hereafter named and at her decease the said sum to be paid to her children. But should there be no child or children her surviving then the said sum is to revert, to and become a part of the body of my original estate.

"*Third.* I desire invested for the use and support of my wife, Mary P. Elton, and daughter, Laura E. Virgil, all the rest and residue of my estate of whatever kind or nature whether real or personal. But should the said use not be sufficient for their comfortable maintenance and support they are hereby and herein authorized to use so much of said personal estate as may be necessary therefor or sell and give good conveyances in the law for any of my real estate and appropriate the proceeds thereof to such maintenances use and support.

"*Fourth.* At the death of my wife I give devise and bequeath the use of all my estate remaining to my daughter, Laura E. Virgil, during her natural life at her death to be paid to her child or children but in case she leave no child or children her surviving then said sum is to revert to and become a part of the body of my original estate.

"*Fifth.* If my daughter Laura E. Virgil leave no child at her death I will devise and bequeath one thousand dollars to the American Tract Society five hundred to the home missionary Society five hundred to the foreign missionary society and the remainder to be divided equally between my nephews and nieces.

"*Sixth.* I hereby nominate constitute and appoint Daniel L. Pierce Daniel L. Freeman of Canaan, Ct. the executors of this my last will and testament and authorize them to appoint two trustees at any time they may think best to take charge of the property or if either one should die the one living is authorized to make the appointment as he thinks best."— *Held* (1), that thereby the entire estate of the testator, both real and personal, was placed in trust, and it is of little importance whether the fee of the real estate is technically vested in the executors or trustees or passed to the testator's heirs subject to be divested and transferred to purchasers by the exercise of a power of sale which the trustees undoubtedly hold; (2) that it was the testator's intention to direct the

method in which the trustees are to dispose of the income during the lifetime of the testator's niece, widow and daughter, and then distribute the principal among a considerable class of beneficiaries and also to have the trustees exercise the power to sell the testator's real estate for the purpose of keeping the estate properly invested and for the purpose of making distribution of the principal at the end of the trust; (3) that nothing contained in the third paragraph can be interpreted as empowering the widow and daughter who are receiving an income from the trust estate to exercise any power of sale of real estate in their own names and on their own behalf, the phrase "they are hereby authorized to use so much of said personal estate" plainly meaning that they are authorized to draw upon the trustees for portions of the trust estate in the possession of the trustees, and the further provision immediately following authorizing the wife and daughter "to sell and give good conveyances" of any of the testator's real estate and appropriate the proceeds in like manner, meaning that they are authorized to require the trustees in case the contemplated necessity arises to make sale of real estate; (4) that the express direction that in case of a certain contingency arising the beneficiaries, who receive the income for their support, shall have a right to have the real estate sold, does not impliedly limit the power which the trustees must exercise at all times to keep the estate. consisting largely of land, invested so as to yield an income; (5) that the testator for the purposes of investment and reinvestment of his estate and the providing of an income for the support of his widow and daughter, and for the purpose of distribution possibly among a large class of individuals, places the whole time and manner of selling his estate absolutely within the control of the trustees.

2. The power contained in the third paragraph of the will to supply any deficiency of income to providing comfortable maintenance for the support of the widow and daughter from the principal of the estate, does not extend to the support of the daughter after the decease of the widow.

*Ex parte* suit by trustee under a will for construction and instruction. Heard on bill and depositions.

*Mr. Benjamin Stevens,* for the complainant.

STEVENSON, V. C.

The case presents for construction the following clauses from the will of John R. Elton, deceased, which will was executed September 25th, 1888, and admitted to probate in Cumberland county, New Jersey, March 13th, 1901:

"*Second.* I give devise and bequeath to my niece Lizzie E. Whitan the use of two thousand dollars during her natural life said money to be kept safely invested for her use and the interest semi-annually to be paid her

by my executors hereafter named and at her decease the said sum to be paid to her children. But should there be no child or children her surviving then the said sum is to revert, to and become a part of the body of my original estate.

"*Third.* I desire invested for the use and support of my wife, Mary P. Elton, and daughter, Laura E. Virgil, all the rest and residue of my estate of whatever kind or nature whether real or personal. But should the said use not be sufficient for their comfortable maintenance and support they are hereby and herein authorized to use so much of said personal estate as may be necessary therefor or to sell and give good conveyances in the law for any of my real estate and appropriate the proceeds thereof to such maintenances use and support.

"*Fourth.* At the death of my wife I give devise and bequeath the use of all my estate remaining to my daughter, Laura E. Virgil, during her natural life at her death to be paid to her child or children but in case she leave no child or children her surviving then said sum is to revert to and become a part of the body of my original estate.

"*Fifth.* If my daughter Laura E. Virgil leave no child at her death I will devise and bequeath one thousand dollars to the American Tract Society five hundred to the home missionary Society five hundred to the foreign missionary society and the remainder to be divided equally between my nephews and nieces.

"*Sixth.* I hereby nominate constitute and appoint Daniel L. Pierce Daniel L. Freeman of Canaan, Ct. the executors of this my last will and testament and authorize them to appoint two trustees at any time they may think best to take charge of the property or if either one should die the one living is authorized to make the appointment as he thinks best."

The testator's wife, Mary P. Elton, above referred to, predeceased him. His daughter, the above-named Laura E. Virgil, his sole heir-at-law, one of the defendants in this suit, is now sixty-nine years of age and has no child. Mrs. Virgil had a child who died at some time, not stated, either before or after the testator made his will, in which he provided for the contingency of his daughter's leaving no child at her death.

The average gross income of the entire estate for several years had been $2,265. One thousand nine hundred and fifty-five dollars of this income is derived from personal estate, and one farm situated in the west which produces $262. Some of the real estate is unproductive and is a burden. The exact net income is not stated, but it may be presumed to be somewhere in the neighborhood of $2,000. The exact circumstances under which Mrs. Virgil is living are not set forth, but it seems that her expenses, owing to illness, &c., during the year preceding the filing of the bill, were over $2,700, which the bill alleges made a "deficit of

about $400 between her income and the expenses." It would seem therefore that the net income available for Mrs. Virgil's support is at least about $2,000. It is not necessary to fix more accurately the net income which Mrs. Virgil receives.

There seem to be two questions which the complainant as trustee is entitled to have answered by this court for his guidance, in respect of things to be done or to be left undone at the present time.

1. The proceedings which have been so far taken in the execution of the foregoing will, including the appointment of the complainant as "trustee in the place of Daniel L. Freeman to execute" the trust created by the paragraphs above quoted from the will of John R. Elton, deceased, have assumed correctly, in my judgment, that the language of the will when properly interpreted creates a trust, the extent of which is not distinctly defined in any one part of the will. My conclusion is that if this will is taken as a whole, the entire estate of the testator, both real and personal, was placed in trust, and it is of little importance whether the fee of the real estate is technically vested in the executors or trustees or passed to the testator's heirs subject to be divested and transferred to purchasers by the exercise of a power of sale which the trustees undoubtedly hold. I do not consider it necessary to elaborate any theory on this subject which I may hold because the result is precisely the same whichever of the two theories may be adopted.

The will is evidently the work of an unskillful draftsman, who was technically not well qualified to perform such a task, but I think that the intention to put the whole estate in trust, direct the method in which the trustees are to dispose of the income during the lifetime of the testator's niece, widow and daughter, and then distribute the principal among a considerable class of beneficiaries, is plainly declared. The intention also, I think, is manifest to have the trustee exercise the power to sell the real estate of the testator for the purposes of keeping the estate properly invested and for the purpose of making distribution of the principal at the end of the trust.

At the start, $2,000 is expressly given to the executors in trust to keep the same safely invested and pay the interest thereon

semi-annually to a niece of the testator. Next, we have the express provision that "all the rest and residue" of the testator's estate "of whatever kind or nature, whether real or personal," be invested for the use and support of the testator's wife and daughter. The provision in connection with this direction that in case the "said use," *i. e.*, the income, be not sufficient for the comfortable maintenance and support of these beneficiaries

"*they* are hereby and herein authorized to use so much of said personal estate as may be necessary therefor, or to sell and give good conveyances in the law for any of my real estate and appropriate the proceeds thereof to such maintenance, use and support"

when read in connection with the entire will, in my judgment, cannot be interpreted as empowering this widow and daughter who are receiving an income from the trust estate to exercise any power of sale of real estate in their own names and on their own behalf. The phrase "they are hereby authorized to use so much of said personal estate as may be necessary," plainly means that they are authorized to draw upon the trustee for portions of the personal estate in the possession of the trustees. The further provision which immediately follows authorizing the wife and daughter "to sell and give good conveyances" of any of the testator's real estate and appropriate the proceeds in like manner, must be construed to mean that they are authorized to require the trustees in case the contemplated necessity arises to make sale of real estate. The third paragraph, which contains the provisions which we are now considering, starts out by directing that the entire residue of the testator's estate, both real and personal, be "invested" for the purpose of yielding an income for the support of these beneficiaries. Manifestly, the trustees must control the real estate, collecting the income thereof, and whenever proper occasion arises, selling the real estate in order to keep the entire estate properly invested.

The express direction that in case of a certain contingency arising the beneficiaries who receive the income for their support shall have a right to have the real estate sold, does not impliedly in my opinion limit the power which the trustees must exercise at all times if they are to keep an estate consisting largely of

land invested so as to yield an income. The testator evidently was laying down a peremptory rule that the entire principal of his estate, both real and personal, should be charged with the comfortable support of his wife and daughter, and that such support should be provided even to the exhaustion of the entire estate. The trustees would not be allowed after the personal estate had all been used for the support of these beneficiaries to answer their call for further support by saying that they had no money left, and that the small income from unprofitable lands was all that they could thereafter pay over. The widow and daughter in the contingency stated have the absolute right to compel the sale of the real estate, without the slightest regard to the ordinary action of the trustees in selling the same for purposes of investment. The express grant of this right in the beneficiaries to compel the exercise of the power of sale in a certain contingency, in my judgment, does not impliedly exclude the wider exercise of that power for other purposes which I find in this will when taken as a whole and read from the four corners.

That the testator contemplated that his entire estate, both real and personal, should be managed by trustees, is plainly expressed in the sixth paragraph in which the executors are expressly authorized to appoint trustees "to take charge of the property."

All the provisions of this will show plainly that the testator is dealing with an invested estate, the income of which, or, to use his word, "the use," of which is given to his niece, his widow and his daughter during their lives. There is nothing to suggest that the testator intended that any of this property, real or personal, should be subject to the control of these beneficiaries, after we have adopted the view above expressed of the actual meaning of the testator in providing in the third paragraph for the application, in case of necessity, of the principal of his estate, both real and personal, to the support of his widow and daughter.

The fourth paragraph expressly gives the use, *i. e.*, the income of the entire estate after the death of the widow, to the daughter during her natural life, and directs that at her death the principal shall be *paid* to her child or children. It is plain that the testator contemplated that the principal would be vested in a trustee who would, in execution of the trust, pay this principal.

No words are used to indicate that the testator had in mind that the estate would be vested in the daughter, and then pass upon her death to any issue which she might leave. But the paragraph proceeds without a pause to provide in case the daughter should leave no issue her surviving, then "said sum," *i. e.,* the entire principal of the estate "is to revert to and become a part of the body" of the testator's "original estate." It may be noted that the testator by using the word "sum" seems to consider it highly probable, if not practically certain, that when his daughter died the entire estate would consist of property which could aptly be styled "a sum."

The fifth paragraph seems to make it plain beyond all question that the trustees were to sell the real estate for the purpose of making a distribution of the principal after the death of the life tenants. This paragraph expressly provides that upon the death of the daughter without issue, $1,000 is to go to the American Tract Society, $500 to the Home Missionary Society, $500 to the Foreign Missionary Society, and the remainder is to be "divided equally between my nephews and nieces." While the proofs do not show how many nephews and nieces the testator left, the bill sets forth the names of thirteen nephews and nieces residing in different states and nations, to wit, Canada, Utah, California, Florida, Nebraska and Connecticut, and these nephews and nieces are all made defendants. As this case is presented to the court I think for the purpose of construing this will, we may consider that the testator contemplated a distribution among a large number of persons and corporations residing or located in widely separated places. A conversion of the estate into money for the purposes of distribution seems to have been necessarily contemplated and intended and directed in this will. While the exercise of a power to sell real estate for the purposes of distribution does not necessarily involve the exercise of such power for the purpose of investment before the time of distribution arrives, in this case there is nothing to limit the time when this power is to be exercised. The testator for the purposes of the investment and reinvestment of his estate, and the providing of an income for the support of his widow and daughter, and for the purpose of a final distribution possibly among a large class of

individuals, in my judgment, places the whole matter of the time
and manner of selling his real estate absolutely within the con-
trol of the trustees.

2. The next question to be answered is whether the power con-
tained in the third paragraph of the will to supply any deficiency
of income to provide comfortable maintenance and support for
the widow and daughter from the principal of the estate, extends
to the support of the daughter after the decease of the widow.

I am unable to perceive any warrant for such an appropriation
of the principal, or any part thereof. The will, it seems to me,
is reasonably plain on this subject. I do not find any incon-
sistency such as is referred to in the brief on behalf of com-
plainants.

In the third paragraph the testator is dealing with a situation
radically different from that which he deals with in the fourth
paragraph. He is contemplating his decease, leaving his wife
and his only child, his daughter, Mrs. Virgil, surviving, and call-
ing for care and support. Whether Mrs. Virgil's child was then
living we are not informed, but in any case there was a family to
be provided for with the widow at the head. The residue of the
testator's estate, both real and personal, which constituted the
greater part of such estate, was devoted to the support of this
family which the testator contemplated leaving. With an income
probably not exceeding $2,500 in view, the testator makes pro-
vision for the maintenance of his family, if necessary, out of the
principal.

In the fourth paragraph the testator deals separately with an
entire change of situation which he contemplated as highly
probable, viz., the death of his widow in the lifetime of his
daughter. The income of his estate, which he might contem-
plate as liable to prove insufficient for the support of his widow
and daughter, he may very well have deemed amply sufficient
under all contingencies for the support of his daughter alone, or
his daughter and her child, if, when the will was made, such
child was living. At any rate, the testator makes an inde-
pendent, distinct appropriation of the "use," i. e., the income of
all his estate, "remaining" to his daughter "during her natural
life," and directs that at her death the estate "be paid to her

child or children," and he adds, "But in case she leave no child or children her surviving, then *said* sum is to revert to and become a part of the body of my original estate." It is the estate *remaining* upon the death of the wife, the *use* of which is given to the daughter. The word "remaining" suggests that the testator had in mind the possible, perhaps probable, depletion of the *corpus* of the estate under the provisions of paragraph third in order to secure the comfortable maintenance of his widow and daughter during their joint lives. There is no such phrase employed by the testator in the fourth paragraph where he disposes of the *corpus* of the estate after the death of his daughter. This fourth paragraph expressly directs that the estate remaining upon the death of the widow shall be *paid* at the daughter's death to her child if she have one, and if she leave no child, then "said sum," *i. e.,* the sum remaining upon the death of the widow, is to "become a part of the body" of the testator's "original estate." No depletion of the *corpus* of the estate for the support of the daughter after the widow's death is recognized by this will as possible, and the carrying out of the express provisions of the fourth paragraph prevents any extension of the operation of the third paragraph after the widow's death by implication. The absence of an express provision for the application of the principal to the support of the daughter after the widow's death is significant. In the third paragraph the "use," *i. e.,* the income of the estate is primarily devoted to the comfortable support of the widow and daughter, and recognizing that the income might be insufficient to secure such support, the testator expressly authorizes resort in such case to the principal. In the fourth paragraph there is no express provision for the support of the daughter; she merely takes the "use," *i. e.,* the income, as a life tenant, and there is no suggestion in this paragraph that she is to get any support, comfortable or otherwise, in any case out of the principal. Of course, the testator knew that he was providing in the fourth paragraph for the daughter's support, but there is nothing in the will to indicate that he had any doubt that the income which he thought might be insufficient for the comfortable support of his widow and daughter would, under all conditions for which he saw fit to provide, be ample to provide such

support for the daughter alone. The sole basis for any right of the daughter after the widow's death to be supported in any case out of the principal, must be found in the third paragraph, and, after according to that paragraph the most liberal view possible· as a provision for the maintenance of a widow and daughter, I am unable to extend its operation to the radically different state of affairs after the widow's death for which the testator had made express provision in the paragraph immediately following.

I conclude that there are no grounds for holding that the beneficiaries who take under this will upon the death of Mrs. Virgil without issue, are required to submit to any depletion of the fund which is to be divided among them in order to provide for the comfortable support of Mrs. Virgil in her old age according to the scale of living to which she probably has been accustomed, or according to any scale whatever. It may be conceded that if the mind of the testator in 1888 had been made to consider the probability that his daughter might live to extreme old age, and that the cost of living might greatly rise, and that it was his moral duty to provide first of all for the support of his only daughter before manifesting benevolence to his nephews and nieces and charity to missionary societies, he would or might have made the same provisions for the benefit of his daughter which he so carefully made for the support of his widow and daughter during their joint lives. The testator, however, perhaps did not contemplate all probable future conditions, and therefore made no provision for them. It may be noted, however, that the testator made this will in 1888 and died in 1901, without making any change in that instrument, although meanwhile conditions had been greatly changed by the death of his wife. If there was a substantial period between the death of the testator's wife, the date of which does not appear in the proofs, and his own death, and he kept the provisions of his will in mind, presumably he was satisfied to have the fourth paragraph of his will go immediately into effect upon his death in case his daughter survived him. It is also possible that the testator reposed upon some erroneous view of the construction and effect of his will under the changed conditions which had occurred after the will was made. Courts can provide no remedy for the evil results of such errors

on the part of testators in regard to the meaning of their own wills, as I had occasion to point out in the case of *Zabriskie* v. *Huyler, 62 N. J. Eq.* (*17 Dick.*) *697.* It is hardly necessary to say that this will cannot be construed with reference to the "understanding in the family" of the testator after his decease in regard to its meaning.

This· is perhaps one of those quite numerous cases which tempt courts to work out and enforce wills which testators have not made, but which the courts think that the testators would have made if they "had had the whole circumstances present" to their minds. *Higgins* v. *Dawson* (*1902*), *A. C. 1, 6.*

I think that the foregoing gives the complainant all the instructions called for by the case which he presents to the court. A decree will be advised in accordance with the views herein expressed. If there is any matter presented by the case which has not been covered by this memorandum, counsel may be heard further upon settlement of the decree.