The amended bill of complaint prays a construction of the last will and testament of Frederick G. Brown, deceased, and a declaration of complainant's rights thereunder. Complainant is the widow of the testator, a primary beneficiary under his will, and one of the three trustees appointed therein to administer a trust of decedent's residuary estate.
Complainant calls attention to the fact that a spendthrift clause was included in the will, and that the testator specifically provided by a codicil for the payment to his beneficiaries of principal, in addition to income, if necessary to provide for their support, comfort and maintenance or to meet any emergency. Complainant argues that decedent's dominant testamentary purpose was to insure to her and to his daughter, Marie Brown Sheble, expense-free homes and a substantial income for life, and contends for a construction of the will and codicil which would absolve her from payment of two demand promissory notes, aggregating $46,669.44, which she gave to her husband for moneys paid by him to her stockbroker to prevent sale of pledged securities. Her co-trustees maintain that no substantial question of construction has been projected by the complainant; that the single question she agitates was correctly resolved by the parties themselves immediately following their qualification as executors; and, that complainant, by her conduct over the eleven years that have since passed, has estopped herself from being granted any relief under her bill.
The right of a testator, under certain circumstances, to prohibit the taking or alienation of a testamentary gift by any person other than the beneficiary was recognized in New Jersey as early as 1852. Arnwine v. Carroll, 8 N.J. Eq. *Page 433 620, 625; affirmed, 8 N.J. Eq. 886. However, there seems to have been no judicial consideration of the particular legal question involved in the present case reported until 1941. In the case of In re McGregor an opinion of Vice-Ordinary Fielder was adopted by the Court of Errors and Appeals, 130 N.J. Eq. 5;19 Atl. Rep. 2d 865; 145 A.L.R. 1320n. The Vice-Ordinary, after discussing the facts proven, said: "The trust was created as a spendthrift trust with the definite intention that no part of it should be made available for the benefit of Donald's creditors, of whom the estate is one, and the trustee was given specific instructions as well as discretion by the codicil which created it, as to the use of trust income. * * * If he [the trustee] were to pay the whole or any part of the income to the executors in reduction of Donald's debt, he would defeat the decedent's expressed intention which was that no part of income of the trust should be devoted to any purpose other than the support of Donald, or his wife and children." (Italics mine.) A quite recent decision of our Court of Errors and Appeals further established the principles applicable to a case such as the present. In Chelsea-Wheeler Coal Co. v. Marvin, 134 N.J. Eq. 432; 35 Atl. Rep. 2d 874, Mr. Justice Colie said: "We are faced with what may be termed conflicting phases of public policy; on the one hand the right of creditors to satisfaction of the just debts owing to them and on the other hand the equally well-recognized right of the head of a family to provide for his dependents after his death. * * * While the statute [R.S.2:26-182, dealing with the right of a judgment creditor to reach debts and income from trust funds owing to the judgment debtor] referred to above is not involved in the present situation and moreover is applicable only to involuntary alienation, nevertheless it is declarative of a public policy to safeguard a reasonable sum for sustenance from the hands of creditors."
The spendthrift clause in the will now before the court reads:
"Sixth: Any payment or payments of either income or principal from my residuary estate hereinbefore directed to be made to any one or all of the beneficiaries hereinbefore named, shall not be subject to *Page 434 
the debts, engagements, anticipation or alienation of any beneficiary or beneficiaries, nor shall the same be subject to judgment, attachment or other process of law at the hands ofanyone whomsoever." (Italics mine.)
The paragraph of the codicil to which complainant calls particular attention reads:
"I further give my Executors and Trustees full power and authority to pay over and deliver from time to time to the person or persons who may at the time be the beneficiary of all or any part of my estate, any or all of the principal (in addition to the income) of that part of my estate in which the particular person or persons may be interested. My idea in making this provision is to enable members of my family or other beneficiary to provide for their suitable support, comfort and maintenance or for the education of any dependent beneficiary, or to meet any emergency such as illness, loss or misfortune that may befall them or any of them. The payment of the principal is to rest solely within the discretion of my Trustees and cannot be enforced by any person or persons whomsoever."
The primary beneficiaries under the testator's will are his widow and daughter. By paragraph 2 the testator bequeathed to his wife and to his daughter all of his personal, intimate effects, "* * * to be divided between them in such manner as they may agree * * *." By the third paragraph he gave and devised a dwelling known as 414 Lippincott Avenue, in the Borough of Riverton, to his daughter, "* * * for and during the term of her natural life, without the payment of any rent therefor, * * *." He then directed that all expenses for the maintenance of this dwelling "* * * be charged to and paid from the income from my residuary estate." By the fourth paragraph the testator made similar provision for his wife, giving her, for life, the dwelling 802 Main Street, Riverton, with all maintenance charges to be paid out of the income from his residuary estate. That estate he devised and bequeathed to his three trustees, the net income to be paid, two-fifths to his wife the complainant for life, and three-fifths to his daughter Marie Brown Sheble for life. Upon the death of these beneficiaries, he directed that the balance of the trust res, including the two dwellings, be distributed among his grandchildren, the children of his daughter Marie Brown Sheble. *Page 435 
The dominant purpose of the testator, when he formulated and executed his will and the codicil is clearly expressed in those instruments. While, in this instance, the testator did not specifically provide that income from the trust be paid out only to a beneficiary upon his personal receipt, or give to his trustees absolute discretion as to payment or abstinence from payment to beneficiaries of trust income, he did unequivocally declare that payments of income or principal from his residuary estate, directed to be made to any beneficiary, should not be subject to the debts of such beneficiary or "judgment, attachment or other process of law at the hands of anyone whomsoever." The significance of testator's words, "at the hands of anyone whomsoever" cannot be doubted or misunderstood. Testator did not exclude his executors as possible creditors; his words were all inclusive. Furthermore, his intent to insure "suitable support, comfort and maintenance" for his wife and to care for her in any emergency that might come upon her was emphasized in his codicil. His executors and trustees are specifically authorized to use up to two-fifths of the principal of the residuary estate in addition to income to effectuate testator's purpose.
Testator's will was executed August 5th, 1925; the codicil, August 29th, 1925. The intent of a testator is to be ascertained as of the time of the execution of his testamentary instruments; the instruments become effective at his death. And, it has been held that, where a substantial period elapses between the execution of the will and the death of the testator, during which time material changes occur respecting the testator's estate or his beneficiaries, and no change is made by the testator in his will, it may be presumed that he was content to have his will, as executed, become fully effective at his death. Vrooman v.Virgil (Court of Chancery), 81 N.J. Eq. 301, 310;88 Atl. Rep. 372.
It was the testimony of the complainant that she came to possess some property by inheritance. Apparently she managed this separate estate herself. In August, 1932, she was in danger of losing securities valued at $29,669.44 which she had hypothecated with a stockbroker. Her husband came to her rescue; he gave to her or paid over to her stockbroker *Page 436 
$46,669.44 to close out the account. Upon release of her pledged securities they were assigned by her in blank and given to her husband to hold as collateral to the two promissory notes here in question. One note was approximately secured by the collateral. On that note Mr. Brown asked for only four per cent. interest; on the unsecured note, the interest fixed was six per cent. The collateral, the notes and a receipt of the stockbroker for money paid, were found together in the safe deposit box of the testator following his death. The notes had not been canceled.
Complainant asserted in her amended bill that the testator, during his lifetime, released her from her obligation to pay the notes. To support this allegation we have only her testimony, and that was limited to a statement that her husband intended to cancel the obligations. If the intention of the testator to forgive the debt had not been made clear in his will, a presumption would have been indulged by this court that the notes were valid obligations of the complainant. Even a gift of a legacy by a creditor to his debtor does not operate as a release or extinguishment of a debt due from the legatee, when securities held for payment of the debt remain uncancelled and the intention of the testator to annul the debt is not clear. Snyder v.Warbasse (Court of Chancery), 11 N.J. Eq. 463, 473.
However, as I have already held, the intention of the testator to forgive his wife the debts represented by her two notes is clearly expressed in his will and codicil. Thus, we come to a discussion of the defense of estoppel.
The position which the complainant now assumes is inconsistent with her conduct over the past eleven years. That conduct naturally and directly caused her co-executors and trustees to adopt and follow a course of action which has materially affected their responsibility to their cestuis que trust, altered the status of the trust itself, and affected the interests of future beneficiaries. Complainant was nominated by her husband to be an executrix and a trustee of his will; she was also a beneficiary thereunder. Her moment for decision came when, in her presence, her husband's safe deposit box was opened and her notes were found attached *Page 437 
to the securities which she had given to him, and uncanceled. She did not then declare that her husband had annulled her debt; what she did say was that her husband had intended so to do. She did not, before qualifying, seek a construction of the will or a determination as to her liability on the notes, yet she knew, or should have known, that if she qualified as an executrix and trustee she would owe one hundred per cent. loyalty to the trust she assumed. Camden Trust Co. v. Cramer (Court of Errors andAppeals), 136 N.J. Eq. 261; 40 Atl. Rep. 2d 601. She chose to qualify.
Upon the qualification of the executors it became necessary that they file federal and state tax returns. Complainant signed the necessary forms; in them her notes were listed as assets of the estate and for their face value; upon them substantial tax payments were made from the estate by the executors. Complainant then joined with her co-executors to seek the approval of the Burlington County Orphans Court of an executors account. Therein her notes were again listed as assets of the estate at their face value. Complainant, on the accounting, sought and was allowed the commissions of an executrix — commissions based upon figures which included the principal amount of her notes and the interest paid by her. Following court approval of the account, she joined with her co-executors in transferring the assets of the estate, including her two notes and the possession of her collateral, to the trustees. As a trustee, she accepted the notes at face value. The moneys expended by the executors for state and federal taxes and the commissions paid to complainant and to the two defendants as executors and trustees were taken from the residuary estate which the trustees were directed to ultimately distribute among the testator's grandchildren.
When the executors received complainant's notes and her collateral, it became necessary for them to put some construction upon the will and codicil and to determine upon a course of action. Complainant did not then suggest that, by the terms of his will, her husband had released her from payment of her notes; what she did was to agree to a deduction of interest on the notes from income payable to her under the *Page 438 
will. The procedure adopted was this: A statement was forwarded to Mrs. Brown by her co-fiduciary, Corn Exchange National Bank and Trust Company, showing the amount of income payable to her from the estate (derived, in part, from interest on her two notes); Mrs. Brown signed a receipt for her share of the income and received a check for the amount due her, less the interest called for on her notes; the bank gave a receipt to Mrs. Brown for interest paid. One hundred five such checks and eighty-seven such receipts were put in evidence. The checks cover the period from December 9th, 1933, to February 9th, 1943; receipts were not taken after the year 1941. Complainant's consent to the deduction of interest from income was never effectively withdrawn until she filed her bill in this cause.
The testator died November 3d 1932; his will was probated November 18th, 1932; the account of the executors was presented and approved February 15th, 1934. February 5th, 1933, complainant wrote a letter to the trust officer of her co-trustee, Corn Exchange National Bank and Trust Company. In it she said: "It is comforting to me to know that the interest I now owe to the Estate will all be paid — and the balance." On February 9th, 1933, she gave her personal check to the executors for $427.59 in payment of interest on her notes. July 11th, 1934, she made a direct payment of $2,230 to the trustees in reduction of her $19,000 note. In consideration of the latter payment the trustees returned to her some of the securities held by them as collateral. April 30th, 1934, complainant made another payment of $2,770 on the principal of said note and at her request the trustees delivered to her additional securities.
Complainant's reduction of the principal of the notes was made voluntarily and from out of her own funds; her payments of interest were also voluntarily made. The prohibition of the testator against alienation of income payments by a beneficiary only applied to income which had not accrued. When deductions for interest were made from income payable to complainant, the income had accrued and was actually due. Income such as this, when it accrues, becomes vested in the cestui que trust and subject to his *Page 439 
disposition and control. The Trust Company of New Jersey v.Gardner (Court of Chancery), 133 N.J. Eq. 436, 439;32 Atl. Rep. 2d 572.
The detail work of the executors and trustees has always been taken care of by Corn Exchange National Bank and Trust Company. Regularly, over the years, it submitted statements of trust investments to complainant and to Mrs. Sheble. Ten such statements were received in evidence; each bore upon it these words: "I have examined this statement, find it satisfactory, and approve your management of the fund up to date." All of these statements were signed by the complainant, and complainant's notes are listed in each of these statements as assets of the estate.
The parties did, as defendants suggest, place a construction upon the will and in particular upon those portions wherein complainant now asserts there is ambiguity. Complainant was adversely affected by that construction, which fact is important in considering her conduct and determining the applicability of the doctrine of equitable estoppel. Our Court of Errors and Appeals, in Fink v. Harder, 111 N.J. Eq. 439, 440;162 Atl. Rep. 614; affirmed this court on an opinion of Vice-Chancellor Fallon which contained the following statement: "Where, as in the case sub judice, parties in interest have practically construed a will, and allowed a beneficiary named therein to possess and enjoy a devise, relying upon the devisee's assumed right thereto, the parties to such practical construction may be regarded as being estopped from asserting the contrary. In re Marx,103 N.Y. Supp. 446." See, also, 69 C.J., Wills, ¶ 1167; Paige on Wills, § 1614.
"In modern usage, equitable estoppel and estoppel in pais are convertible terms, embracing also quasi-estoppel. They embody the doctrine, grounded in equity and justice, that one shall not be permitted to repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, has relied thereon. * * * It is of the essence of equitable estoppel that one is precluded from taking a position inconsistent with that previously assumed and intended to influence the conduct *Page 440 
of another, if such repudiation `would not be responsive to the demands of justice and good conscience,' in that it would effect an unjust result as regards the latter." New Jersey SuburbanWater Co. v. Harrison (Court of Errors and Appeals),122 N.J. Law 189, 194; 3 Atl. Rep. 2d 623.
Complainant's co-trustees, Corn Exchange National Bank and Trust Company and Mrs. Sheble, have consistently acted in accordance with the understanding had with complainant that she would pay interest on her notes out of the income paid her from the trust and that she would pay the principal in installments or upon sale of her securities. They charged themselves with receipt of her notes at face value; they reported to the state and to the federal governments that they held her notes at face value and, on these reports, paid out moneys of the estate in taxes; they credited complainant with payments of interest on her obligations and paid her income as upon receipt had of those moneys; they sought and accepted commissions on the basis of complainant's agreement. It is equitable and just that complainant should be, and she is, concluded and forbidden by law to now repudiate her agreement and her past conduct so far as it affects the administration of the estate up to the time this suit was instituted.
Among the securities of complainant found in the testator's safe deposit box were 885 shares of common stock of United Gas Improvement Company. In 1943 proceedings were taken to dissolve that company and, subsequently, distribution was made to its stockholders of common stock of Philadelphia Electric Company and Public Service Corporation of New Jersey. Two hundred ninety-five shares and seventy-three and nine-twelfths shares, respectively, were issued in exchange for the 885 shares. By reason of the fact that the old shares were registered in the name of complainant, the new stock, when issued, was mailed to her. Defendants then requested complainant to deposit these certificates with other securities held by the trustees as collateral to her two notes. She refused. Defendants petitioned the Burlington County Orphans Court for an accounting from the complainant and for an order directing her to deliver the *Page 441 
certificates, duly endorsed, to the trustees. Complainant defended but was ordered by the court to turn over the stock to the defendants to be held by them in escrow pending determination, by this or another court, of the question of ownership and right of possession. This cause was then instituted.
When the complainant filed her bill herein she gave definite notice to her co-trustees that she would no longer permit interest on her notes to be deducted from income payable to her from the trust, that she considered her debt to her husband to have been forgiven by the terms of his will, that she would insist on the return to her of her securities, and that, in the future, she would insist upon receipt of a full two-fifths share of the net income from the trust. I have disposed of her claims with respect to past payments of interest on the notes and payments made on account of principal. I shall now pass upon her rights from and after the filing of her bill. Those rights must be declared as they exist in law and must be grounded upon the court's determination as to the intention of the testator when he was disposing of his estate. Morrison v. Dawson (Court ofChancery), 115 N.J. Eq. 45, 48; 169 Atl. Rep. 694. As was said by our Court of Errors and Appeals in New Jersey Suburban WaterCo. v. Harrison, supra, the doctrine of estoppel is applicable only when conduct was designed to influence a person and did operate to produce an unjust or inequitable result to him. A quotation particularly apt to the present case will be found at page 619 of the opinion filed in Demarest v. Hopper (Courtof Errors and Appeals), 22 N.J. Law 599: "`An estoppel is where a man is concluded and forbidden by law to speak against his own act ordered; yea, even tho it is to say the truth.'"Termes de la Ley, tit. "Estoppel;" 1 Lit. Pr. Reg., cited inBest on Evidence 403 § 362.
In my view, complainant's position was radically changed when she filed her bill of complaint. She renounced her agreement recognizing her notes as liabilities and authorizing payment of interest out of income, prayed a construction of the will and codicil by this court, and asked for a declaration of her rights thereunder. The testamentary instruments have now been construed and I have found that by the terms *Page 442 
thereof decedent forgave the debt of his wife. While complainant's failure to obtain a construction of the will before agreeing to pay interest on her notes out of income, and before making the two payments on account of principal, has affected the trust, its administration and the interests of present and future beneficiaries, it has operated generally to the disadvantage of the complainant; resulting payments into the trust have exceeded resulting expenditures from the trust or reductions in value of the trust res. No injustice will be visited upon Mrs. Sheble as a beneficiary or upon her children as future beneficiaries if the trustees now administer the trust in accordance with the court's construction of the will and codicil. Complainant is entitled to receive her notes and her securities, and from and after January 20th, 1944, when her bill of complaint was filed, to be paid a two-fifths part of the net income of decedent's residuary estate as directed in the fifth paragraph of the will. *Page 443