26 N.J. Super. 178 (1953)
97 A.2d 501
ROBERT SEGELKEN, PLAINTIFF-RESPONDENT,
v.
WILLIAM SEGELKEN, MINNIE SEGELKEN YULG AND THE ATTORNEY-GENERAL OF THE UNITED STATES, ETC., DEFENDANTS-APPELLANTS, AND HERMAN SEGELKEN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1953.
Decided June 17, 1953.
*179 Before Judges STEIN, PROCTOR and CONLON.
Mr. Frank G. Schlosser argued the cause for appellants William Segelken and Minnie Segelken Yulg.
Mr. Westley W. Silvian argued the cause for appellant Attorney-General of the United States, as successor to the Alien Property Custodian.
*180 Mr. Emil W.A. Schumann argued the cause for respondent Robert Segelken.
Mr. William R. Gannon argued the cause for respondent The Trust Company of New Jersey, trustee.
The opinion of the court was delivered by STEIN, S.J.A.D. (temporarily assigned).
This is an appeal by three remaindermen from a judgment of the Superior Court, Chancery Division, authorizing the invasion of the corpus of a trust fund for the benefit of the life tenant and requiring in addition the payment of $3,000 out of corpus with interest, which sum was borrowed by the wife of the life tenant from her sister-in-law.
The Attorney-General of the United States, as successor to the Alien Property Custodian, joins in the appeal on behalf of the United States of America, claiming that the interest of Erina Buss Wilcke, a remainderman, a national of an enemy country (Germany) is vested in the United States of America.
Plaintiff's father, Robert Segelken, died November 1, 1937, leaving a last will and testament admitted to probate November 11, 1937. The Trust Company of New Jersey, a corporation, and the decedent's nephew, Ferdinand Michel, and the survivor of them, are therein named as executors. The Trust Company of New Jersey was appointed trustee of the trusts created by the will.
In paragraph Twelfth of the will the testator devised and bequeathed all the rest, residue and remainder of his estate to The Trust Company of New Jersey to hold in trust for the following purposes:

I.
To receive and collect the rents, issues and profits due from all sources.

II.
Pay taxes, water rents, assessments, insurance premiums, repairs and maintenance of his real estate, and such other disbursements as are necessary to make to properly administer his estate, out of the income collected by it.

*181 III.
"The balance of said income, after payment of the said expenses and disbursements and the making of said reservations, shall, from time to time, in such manner as to my trustee, in its absolute discretion, may seem best for the interests of my estate and the beneficiaries of said trust hereinafter named, be paid out as follows, to wit;
A  One-half of said balance of said income shall be paid to my beloved wife, Cecelia Segelken, during her lifetime.
Upon and after the death of my said wife, Cecelia Segelken, I direct that my trustee shall divide the trust fund created for the benefit of my said wife into twenty (20) equal parts and pay the following named persons, or their issue, the share as hereinafter set forth respectively, for their own use and benefit;

To my nephew, Ferdinand Michel, three (3) parts
To my niece, Lucy Michel Deus, three (3) parts
To my nephew, Robert Segelken, son of
 my brother, William Segelken, three (3) parts.
To my nephew, William Segelken, son of
 my brother, William Segelken three (3) parts.
To my nephew, William Segelken, son of
 my brother, Louis Segelken, three (3) parts.

I direct that the remaining five (5) parts shall be added to the trust fund hereinafter set up for my son, Robert Segelken, and held by my trustee on the same terms and conditions as provided for in the administration and distribution of said trust fund; provided, however, that in the event my son, Robert Segelken, predeceases my said wife, Cecelia Segelken, leaving children, then I direct that said five (5) parts shall be divided equally among the children of my said son, Robert Segelken, and added to their respective trust funds, hereinafter set up for them and administered and distributed according to the terms provided for the administration and distribution of said childrens' trust funds. In the event that my said son, Robert Segelken, should predecease my wife without leaving any children, then I direct that the five (5) parts shall be divided equally among my nephews and niece hereinabove named in this clause.
B  The other one-half of the balance of said income shall be paid to my son, Robert Segelken, for and during the term of his natural life.
Upon and after the death of my son, Robert Segelken, I direct that the trust fund be divided into as many shares as my said son shall have children surviving him at the time of the death of my wife, Cecelia Segelken, and the income from the respective trust funds for such children shall be applied for their respective welfare, care and maintenance until they shall respectively attain the age of twenty-one (21) years; and at such time, I direct that the principal or corpus of the trust fund respectively set up for the children of my son, Robert Segelken, shall be paid to them absolutely, *182 together with any accumulated income that may then remain on hand.
In the event my son, Robert Segelken, should die without leaving any children surviving him, then I direct that the income from the trust fund herein set up for my son, Robert Segelken, shall be paid to my wife, Cecelia Segelken, for and during her natural life; and upon the death of my said wife, I direct that the principal or corpus of the trust fund herein created for the benefit of my said son, Robert Segelken, shall be divided equally among the children of my brothers, Louis Segelken, William Segelken and Charles Segelken, and my sister, Mary Buss, respectively, such distribution to be on a per stirpes and not per capita basis, and to be absolute and complete."
Paragraph Fourteenth of the will provides:
"It is also my wish, and I do so order and direct, that immediately after my death, my said executors shall make adequate and proper provision for the support and maintenance of my said wife, Cecelia Segelken, and my son, Robert Segelken, out of the principal or corpus of my estate, in such manner as to my said executors shall seem best, until the income of my said estate coming into the hands of my said trustee shall be sufficient for such purpose.
I also direct my said executors and trustee to permit my beloved wife, Cecelia Segelken, to live in the house occupied by us at the time of my death free of all rent and any charge whatsoever, and I further direct my said trustee to pay all taxes, assessments, water rents, insurance premiums and interest on mortgages, if any, affecting said premises, and the cost of any repairs of renovation to keep said house in proper condition, to the intent and purpose that my beloved wife shall be provided with a comfortable home, free of all expense to her for and during the term of her natural life; provided, however, that all taxes, assessments, water rents, insurance premiums, interest on mortgages and maintenance charges of any kind affecting said premises are paid out of the income of the trust fund created for the benefit of my said wife."
Plaintiff, Robert Segelken, instituted this action for the construction of his father's will and a declaration of his rights thereunder and for judgment directing the trustee to pay to him from corpus such amounts as the court may determine to be necessary for his support and maintenance.
The testimony discloses that plaintiff was at all times dependent upon his father except for a period from 1918 to 1928 when he was employed as a grocery clerk. Thereafter he was supported by his father until his father's death on November 1, 1937. Upon his father's death he received a *183 legacy of $5,000. Yearly income from the trust was paid to him in varying amounts, the maximum being approximately $3,200 in 1941, and the minimum approximately $1,800 in 1950. Since January of 1951 plaintiff's wife says she found it necessary to seek financial assistance for their support. This assistance was sought and obtained from her sister-in-law, Inga Smith, in the form of loans totaling $3,000 for which she signed promissory notes.
The trial court found that under the provisions of the will it was testator's intention that there be adequate and proper provisions made for the support and maintenance of his wife and his son during their joint lives and for the son after the death of his wife, and that to that end the trustee may invade the corpus of the trust. Judgment was entered directing the trustee to pay plaintiff out of income and corpus the sum of $4,000 per year for the remainder of his life, and to pay to Inga Smith out of the corpus the loan of $3,000 with interest.
We think the trial court fell into error. As we read the will, the only direction to invade the corpus contained therein is to be found in the fourteenth paragraph, and that for a specific and limited purpose. In that paragraph testator directed that immediately after his death the executors shall make adequate and proper provision for his wife and son out of the principal or corpus of his estate "until the income of my said estate coming into the hands of my said trustee shall be sufficient for such purpose." The testator apparently realized that some time would elapse before the trust could be set up and become income-producing, so in order to insure proper support and maintenance for his wife and son in the meantime, he directed his executors to use corpus for such purpose.
Reading the will from its four corners, we find nothing to indicate that the testator intended invasion of the corpus of the trust estate for the support and maintenance of his son. Quite to the contrary is the direction to the trustee to make payment to the life tenant out of income only from the trust fund.
*184 Moreover, invasion of the corpus is negatived by the provision Twelfth (III) (B) where the income from the trust fund after the death of the son Robert is directed to be divided among the son's children until they respectively arrive at the age of 21, when the corpus and accumulated income shall be paid to them.
In the event that the son Robert died without leaving children surviving him, the income of the trust is to go to testator's wife for her life, and upon her death the corpus is to be divided among the children of the testator's brothers and his sister, per stirpes and not per capita.
A court cannot order a trustee to pay to one cestui part of a fund which the testator has established for the benefit of others. Hughes v. Federal Trust Co., 119 N.J. Eq. 502 (Ch. 1936); In re Lucey, 98 N.J. Eq. 314 (Prerog. 1925); Vrooman v. Virgil, 81 N.J. Eq. 301 (Ch. 1913). In 1 Restatement, Trusts, § 168(d) it is said:
"The court will not permit or direct the application of the principal to the support or education of one beneficiary where by the terms of the trust income only is to be so applied, if the result would be to deprive another beneficiary of property to which he is or may become entitled by the terms of the trust, whether the interest of such other beneficiary is vested or contingent, unless such other beneficiary consents to such application."
And neither has the doctrine of necessity any application to the property rights in a trust. "The rights cannot be altered to prevent a disappointment which the creator might have provided against had he foreseen the mishap." Fidelity, &c., Co. v. J.R. Shanley, &c., Co., 113 N.J. Eq. 562 (Ch. 1933).
We conclude that under the will the trustee is without power either express or implied to invade the corpus of the trust fund for the support of the plaintiff.
Judgment reversed.